# Gamber *against* Wolaver.

In the performance of a contract to coal wood, the collier is bound to exercise ordinary skill, care, and diligence: and in an action upon it to recover the wages of his labour, it is error in the court to instruct the jury that the plaintiff is only chargeable with gross negligence, or wilful misconduct.

The book of an iron-master, containing an entry of the amount of wood taken up from the chopper, and the dockage of it, is not evidence in an action by the collier against the iron-master, to recover the price of coaling it.

ERROR to the Common Pleas of *Dauphin* county.

John Wolaver against John Gamber. This was an action of *assumpsit,* in which the plaintiff declared for the price of coaling 2758 cords of wood for the defendant, at thirty-five cents a cord.

On the trial of the cause, the defendant offered in evidence a book kept by Mr Crowl, who is dead, containing an entry of the amount of wood taken up from the chopper, and the dockage, as he made it, to be followed by proof that the wood-choppers received pay for that without dispute, and that Crowl was the wood-manager at the furnace and coaling; and that Mr Crowl was examined before the arbitrators, and proved that the book exhibited a correct account.

The plaintiff objected to the evidence, and the court rejected it. Defendant excepted.

The other errors assigned were in the charge of the court to the jury, which also recites the facts of the case: it was as follows:

[Gamber v. Wolaver.]

Parsons, President. This is an action brought by the plaintiff, to recover from the defendant the price of coaling 2758 cords of wood for the defendant.

If the evidence is believed, there was that number of cords of wood delivered at the hearths by the men employed to haul it for the defendant, and the plaintiff coaled the wood. And if the testimony is believed, the plaintiff was to receive the sum of thirty-five cents per cord, for the coaling said wood.

You will bear in mind, that there was no special contract that the plaintiff should produce for his employer any given number of bushels of coal per cord, out of the wood given him to manufacture into coal. Hence we say to you under the evidence, the plaintiff was bound to burn the wood in such a manner as to produce a reasonable and fair yield, according to the kind of wood from which it was to be made. The defendant must bear all the loss of any depreciation in the quantity of coal from the number of cords of wood, unless there was *gross neglect* on the part of the plaintiff in his labour.

The Court have seen no evidence in the cause which would authorize the jury to infer that the plaintiff was guilty of any gross neglect, or any wilful misconduct in his coaling: if the jury have, they will consider it. It is in evidence, that two of the pits were seen to blaze out a little, one of which was left in charge of his hands, in the morning, and that burned but a short time. From the nature of the work in which he was engaged, such accidents must often occur.

And unless he was guilty of great neglect in attending to the coaling, or of wilfully trying to destroy the wood or suffer it to burn up, he is not responsible for any loss which may seem to have occurred to the defendant, between estimating the number of cords of wood, and the amount of coal it would produce.

You will bear in mind, that there is no evidence that the plaintiff was bound to coal any particular quantity of wood. Hence, a position assumed by the defendant's counsel, that a part of the wood was left and not coaled, and a part not hauled, but thrown out by the teamsters under the plaintiff's direction, which might have been coaled, and, therefore, there should be a deduction from the price of his labour, cannot be sustained.

The jury have no right to make any deduction on that account. He might, under the evidence, have left the coaling when he had coaled only 1000 cords, and claimed pay for what he had done; the defendant could have discharged him any hour he chose from a further prosecution of the work. The defendant's counsel allege, that Gamber did not receive as much coal from the wood as he ought to have done. For this the plaintiff is not answerable, unless he was guilty of gross negligence, or wilful misconduct, as before stated.

It will, on this point, be proper for the jury to bear in mind,

I. — F

that Gamber was getting the coal by his teams every day during the summer, while the plaintiff was engaged in his labour. If there was any loss in the yield, the defendant must have known it while the coaling was going on; he must have known how much coal he was getting daily; he had his own teams hauling the wood; he knew daily what quantity of wood was taken to the pits: and it is worthy of your consideration, if there had been such a deficiency in the yield as is alleged, Gamber, it is fair to presume, would have known it: would he not have complained to the plaintiff upon the subject? Do you believe the defendant would have suffered the one-half of his wood to be burned up, wasted, or destroyed, to pay for coaling of the other half? The jury may also reflect, that the defendant has shown no account of the number of loads of coal he received; all the evidence upon that subject is, that Wolaver said the defendant's teams had taken 434 loads, but how many bushels they carried per load, is not so clear. Was it not in the power of the defendant to have shown the precise number of bushels he got from the coaling? Would not his books, if produced, cast light upon the subject?—and the court have seen no positive evidence in the cause, but that the usual yield was produced.

But the important matter in controversy is as to the number of cords of wood coaled. If the wood-choppers made bad cords, and cheated Gamber in the ranking of the wood, there were not full cords according to honest measurement, then the plaintiff cannot take the wood as measured by the choppers in the rank as the true guide, in estimating the quantity, when he was coaling by the cords. Nor is he bound by any deduction which was made upon the wood-choppers or teamsters, unless it was an honest and fair deduction, and the true and correct measurement. Should the jury believe it is, they may adopt it as the number of cords coaled. If you believe that the wood was honestly and correctly measured in the rank, then you may take that as your guide.

You have heard the evidence of the quantity in the rank as hauled, and the deductions made by Gamber from the account of those who hauled, and the allegation as to what was deducted from the wood-choppers. And it is for you to say, what was the real number of cords of wood coaled by the plaintiff: for that he is entitled to recover at 35 cents per cord, should you believe that the contract price fixed by the parties.

The defendant is entitled to credit for all payments he has made to plaintiff. The evidence is, that the plaintiff confessed that the account of defendant amounting to $644.40, was correct, that he claimed a deduction from that, to the amount of $159.60. The defendant claims three other small charges of $2.75, another of $1.25, for debts assumed by Gamber for plaintiff. But unless this was done at the plaintiff's request, he cannot be charged with

them. There is also a charge of $6.95, which defendant claims, but the original account has not been produced, nor does the witness testify that the goods were delivered.

What has been paid him you ought to deduct from the sum you may find as the value of his labour, and whatever balance is due to him, he would be entitled to receive interest upon from the time he finished the work.

Assignment of errors:

1. There is error in the first bill of exceptions, in rejecting the entries in the manager's book, showing the amount of wood, (which the plaintiff below alleges was turned into charcoal by him) as measured by Mr Crowl, the manager, who made the entries, Mr Crowl having died before the trial of the cause in court, but not until after the cause was tried before arbitrators, where he testified to the correctness of the entries offered in evidence, (as was proved by the defendant's witness, Wm Bates.)

2. The charge of the court was calculated to mislead the jury, and contained instructions to the jury on matters of fact, as well as questions of law.

3. The court erred in instructing the jury that as this is " an action brought by the plaintiff, to recover from the defendant the price of coaling 2758 cords of wood for the defendant. *If the evidence is believed*, there were that number of cords of wood delivered at the hearths, by the men employed to haul it for the defendant; and the plaintiff coaled the wood, and if the testimony is believed the plaintiff was to receive the sum of 35 cents per cord, for coaling said wood."

Thus placing the defence on the ground of the credibility of the witnesses, which was not impeached, and representing to the jury as a fact, that 2758 cords of wood had been coaled, although the witnesses did not say, whether the manager's or wood-choppers' account of the wood was correct, but individually had adopted as correct the manager's measurement, which showed that there was but about 2500 cords of wood in the job.

4. The court erred in instructing the jury " that the defendant must bear all the loss in the depreciation of the quantity of coal from the number of cords of wood, unless there was gross neglect on the part of the plaintiff in his labour."

5. The court erred in instructing the jury " that the *court have seen no evidence* in the cause, which would authorize the jury to infer that the plaintiff was guilty of any gross neglect, or any wilful misconduct in his coaling—if the jury have, they will consider it."

6. The court erred in instructing the jury " that a position assumed by defendant's counsel, that part of the wood was left and not coaled, and a part hauled but thrown out by the teamsters, under the plaintiff's direction, which might have been coaled,

[Gamber v. Wolaver.]

and, therefore, there should be a deduction from the price of the labour, cannot be sustained."

7. The court erred in putting tne following interrogatory to the jury, because it did not correctly represent the ground of the defence : " Do you believe the defendant would have suffered the one-half of his wood to be burned up, wasted, or destroyed, to pay for coaling the other half?"

8. The court erred in that part of the instructions to the jury in which they ask " was it not in the power of the defendant to have shown the precise number of bushels he got from the coaling ? *would not his books, if produced,* cast light on this subject ? and the court have seen no positive evidence in the case, that the usual yield was not produced."

*Hamilton Alricks,* for plaintiff in error, as to the admission of the book in evidence, cited 2 *Lord Raym.* 873 ; 2 *Peak. N. P. C.* 150 ; 3 *Penn. Rep.* 280 ; 15 *Mass.* 380.  That the charge was erroneous in saying that the plaintiff was only chargeable with gross negligence ; *Har. Dig.* 2387 ; *Tyr. Rep.* 143 ; 3 *Taunt.* 52 ; 14 *Eng. Com. Law Rep.* 145 ; 11 *Eng. Com. Law Rep.* 414 ; 3 *Camp.* 451.

*Rawn* and *M'Clure* for defendant in error.

The opinion of the Court was delivered by

Huston, J.—In this suit the dispute was occasioned by what is too common among men; the party only made half a contract, or made a contract without mentioning some matters which must be agreed on before their bargain had any certainty.  The owner or manager contracts with wood-choppers, who cut the wood and put it up in cords.  After this is done, the owner or manager, and the chopper go through it and count the cords; unless there is great confidence, this is always done by them when together.  If the billets of wood are not four feet long, or if the cords are put up very loose and open, the manager docks the job, that is, he deducts a sixth, fifth, or fourth for bad measure or loose cording, so that what to an inexperienced person would count one hundred cords, is set down and paid for as only ninety, or eighty, or seventy cords.  It is remarkable that there is hardly ever a dispute between chopper and manager about this dockage.  In some jobs, and with some choppers, there is no dockage; it is agreed that each is a fair cord.  The next person engaged is the wood-hauler, who draws this wood from where it is corded to the hearth where it is coaled.  The next person is the collier, who charrs the wood and delivers it in charcoal.  The wood-hauler and the collier, as well as the chopper, are paid by the cord, and it is obvious, that in making the contract it ought to be distinctly expressed and understood, whether they were to be paid by the cord, as it counted numerically, or by the cord as ascertained by dockage or ad-

[Gamber v. Wolaver.]

justment between the chopper and manager; and in counties where much iron is manufactured this is always settled in the bargain. Having presided in the Common Pleas ten years, in counties where there were many iron-works, I can say that at first some such disputes as this came into court; but this soon ceased. All careful iron-masters, and wood-haulers, and colliers made this an express part of their bargain. I know of no usage about it. In Centre and Huntingdon counties it was always a part of the contract, when I was there. Time, and all contracts being in the same way, may have introduced a general understanding or usage, which is known and acquiesced in by all parties, and which, without being expressed in point of fact, is understood by each party in every contract on the subject. The want of this provision in the contract has given rise to all, or all but one, of the difficulties made in this cause.

A former manager was dead. In one of the books of the furnace was set down the number of cords cut by each chopper who cut wood in this coaling job—and opposite each was written the number of cords docked from each chopper. This was offered in evidence by the defendant, to prove the number of fair cords coaled. I think this would be an unusual book where I have been. I think the chopper who has finished a job has on paper the amount he claims; but, so far as I remember, the manager never enters in furnace books any thing but the number of actual fair cords settled, or in their phrase, " taken up"; but I do not rely on that. If the settlement of the number of cords with the choppers could also establish the number of cords with the wood-hauler and collier, it must be because the agreement was that cords were to be so estimated, and not by counting them as they in number met the eye; besides, from the paper book, it does not appear when this dockage was made, nor were the accounts of the wood-chopper produced to show that they settled according to this dockage, nor were any of the wood-choppers called to prove this. The wood-haulers seem to have charged for drawing the wood to the pits, counting the cords as they stood. The dispute was for what kind of cords the plaintiff should be paid. A settlement with the choppers, without it appearing when made, was no evidence of the contract between plaintiff and defendant, or wood-haulers and defendant. There was another objection to it; it was not, and did not purport to be an account between each wood-chopper and Gamber, but entered at one time, on one page, for the purpose of settling with the plaintiff in this cause.

Cowpick, who seems to have been the manager and clerk, leaves all as uncertain as ever. He says, " when the collier is obliged to make a yield, he takes up the wood himself, (that is, he estimates how many fair cords there are); nothing was said about the yield, when he met to take the coaling, between him and me. It is the custom, if the accounts are all in, and it is shown to the

I.—9　　　　　F*

collier, and he is satisfied, he takes it at an estimate. I do not say who this wood was taken up by; the last entry of the wood was made by me :" thus leaving it as loose a bargain as was ever brought before a court.

There was then evidence given, that, on two occasions, a pit was seen blazing out. This proves nothing; it occurs in every job of 2500 cords more than twice. A pit may blaze out with the most skilful and careful collier; it may do so, and no injury worth naming result from it. If it were suffered to proceed until a large part of the wood was consumed, it is a different matter.

Not the least remarkable part of this case is, that the manager or owner could give no account of the number of loads of coal delivered by Wolaver. One witness states that he said he sent 434 loads. It was also said the loads were estimated from 150 to 170 bushels. This again was a looseness in doing business new to me. On such testimony, much must be left to a jury.

The court said, " you will bear in mind there was no special contract that the plaintiff should produce for his employer any given number of bushels of coal per cord. Hence we say to you, under the evidence, the plaintiff was bound to coal the wood in such manner as to produce a reasonable and fair yield, according to the kind of wood from which it was made. The defendant must bear all the loss of any depreciation of quantity of coal from the number of cords of wood, unless there was *gross neglect* on the part of the plaintiff in his labour." This is all a correct statement of the law, except the conclusion of the last sentence, and I feel convinced the expression *gross neglect* was caught up from a repetition of the phrase by defendant's counsel; it is inconsistent with requiring only a reasonable and fair yield in the previous sentence; a want of reasonable care and skill was the expression corresponding with what had been correctly said before; and this is not so strong as gross neglect. I would not, however, have been willing to have sent the cause back for a single strong expression; but in several succeeding paragraphs the jury are asked " if they could see any gross neglect or wilful misconduct in his coaling;" again, " unless he was guilty of great neglect, or of wilfully destroying the wood;" and again, " the plaintiff is not answerable unless he was guilty of gross neglect or wilful misconduct as before stated." We all think this was stating the matter too strongly; ordinary care and ordinary skill are required from all persons employed in any business. Although I have not heard of an apprenticeship to coaling, it is pretty much a trade generally learned by working as a hireling one or more seasons with one who understands it. The plaintiff and defendant were not bound to any particular time; Wolaver was to go and do as well as he could; from which it might be suspected the wood was not the best. Besides, there was proof, that Gamber in the summer said he was a good collier, and if he was charged with not sending a fair yield, it

might have been expected the person charging him would have been able to show how much he did send. Between 150 and 170 bushels there was a difference of 20; this multiplied by 434, makes a large quantity.

The second and third errors are without foundation in fact; the counsel who assigned them had forgotten that defendant's book was rejected, and the wood-haulers did prove the number of cords they hauled to the pits; but a judge is certainly not wrong in stating what witnesses have sworn to, and leaving their credibility to the jury. But this is not all; the judge told the jury, near the conclusion of his charge, that the important point was, how many cords of wood were coaled. "If the wood-choppers cheated Gamber, and made bad cords, and in ranking the wood there were not full cords according to honest measurement, then the plaintiff cannot take the wood as measured by the wood-choppers, as the true guide in estimating the quantity, where he was coaling by the cord; nor is he bound by any deduction which was made upon the choppers or teamsters, unless it was an honest and fair deduction. Should the jury believe it is, they may adopt it as the number of cords coaled; if they believe the wood was honestly and fairly ranked by the choppers, they may adopt that as their guide." Now, surely the defendant cannot object to this, and they ought not to have supposed this court would not distinguish between the judge's statement of what was proved by witnesses, and what he stated to the jury as their duty, especially as he added, "it is for you to say what number of cords of wood *was coaled by the plaintiff, and for these he is entitled to recover* 35 cents per cord, should you believe that was the price agreed on by the parties."

On the fourth error we have said there was a mistake, in putting it too strongly on gross negligence or wilful misconduct.

The fifth is the fourth over again.

The remaining three I shall dispose of by saying there is nothing in them. If defendant alleged he did not get coal enough, he ought to have objected before the season was ended, and he ought to have shown what he did get, and not left it all uncertain, to the amount of 8680 bushels, or 20 times 434.

Judgment reversed, and a *venire de novo* awarded.