## Rodgers *versus* Stophel.

A wharfinger is one, for hire who keeps a wharf for receiving goods.

His responsibility begins when the goods are delivered on the wharf, and he has, either expressly, or by implication, so received them.

He is responsible for the exercise of reasonable and ordinary care in securing the property from loss.

It is for the jury to determine, from the whole evidence, whether he is a wharfinger or not.

All collateral facts that are, in any direct manner, capable of affording a reasonable presumption or inference as to the principal fact or matter in dispute, are competent subjects of proof.

ERROR to the Common Pleas of *Indiana county*.

This was an action on the case by Thomas Stophel against Henry Rodgers, for negligence in taking care of a quantity of lumber intrusted to him, as a wharfinger, whereby it was lost to the plaintiff.

Henry Rodgers, the defendant, was the owner of a piece of ground adjoining the Pennsylvania Canal, in the village of Nineveh, Indiana county. Persons in the neighbourhood had been in the habit of using it as a place of deposit for lumber, intended to be shipped by the canal. The defendant, desiring to be remunerated for the use of his ground, gave notice that he would charge at the rate of 10 cents for every 1000 feet of lumber deposited there, for the use of the wharf.

In the summer of 1854, the plaintiff sent to the defendant's wharf, about 1200 feet of lumber, for which he agreed to pay the defendant at the rate of 10 cents per 1000 feet. This lumber was subsequently taken away by one Ashbaugh, without the plaintiff's authority, and was lost to him.

On the trial, the plaintiff offered to prove, by George Dill, that in 1853 the defendant took lumber from him, as a wharfinger, on the same wharf, and received compensation for it; he also offered to prove, by John W. Duncan, that in 1851, as an inducement to place his lumber on the defendant's wharf, the defendant said to him, that if he delivered it upon another wharf, where there was no charge for wharfage, *he would have it stolen;* but, if he put it upon the defendant's wharf, *it would be safe.*

The defendant objected to the admission of this evidence; but the court admitted it, and sealed a bill of exceptions.

The court below (BUFFINGTON, P. J.) charged the jury as follows:—

" This is a special action on the case to recover damages for

[Rodgers *v.* Stophel.]

the loss of certain lumber which was delivered by plaintiff on the bank of the canal, on the premises of the defendant.

" The first question to be determined is, what was the contract between the parties ?   For, although the plaintiff seeks to recover from the defendant on the ground of negligence, yet whether he was guilty of such negligence depends upon the character and extent of defendant's duty.

" If it was not his duty to take any care of the property—but he merely granted the privilege of depositing it there, then he was not bound to take any care of it at all—he had no control over it, and would not be liable for loss.

" The jury will therefore decide, in the first place,—what was the contract.   Was it a contract merely for the privilege of using the ground for the deposit of lumber ? or did he engage, in addition to that, to give his care and attention to the protection and safety of the property ?

" If the jury decide that it was merely the right to occupy the ground, then the defendant was not liable, and the verdict must be for the defendant.

" If, however, the jury should believe he held himself out to the world as a wharfinger—as one who kept a wharf, and devoted that, and his personal care and attention, to the protection and safety of the property of persons who would intrust their property to his care.   Or, if the jury should believe that was the contract here, then he would be responsible for the loss while thus in his possession, if he did not exercise reasonable and ordinary care in securing it from loss.   What we mean by ordinary care is what a man of common prudence uses, in managing his own business. And if loss arises from this want of ordinary care, in a person whose duty it was to use such care (which is the case when one man has the charge of others' goods for compensation), then the person thus guilty of negligence, or inattention to his duty, would be liable for the loss.   The jury will decide, if they believe the defendant was bound to take care of these goods, whether he did observe such care as was required of him.   If so, on that ground, verdict for defendant; if otherwise, plaintiff ought to recover."

To this charge the defendant excepted; and a verdict and judgment having been rendered for the plaintiff, for $154.64, the defendant removed the cause to this court, and here assigned for error :—1. The admission of the evidence of Dill and Duncan: 2. The charge of the court below.

*Stewart,* for the plaintiff in error.

*Whites & Coffey,* for the defendant in error, cited 1 *Stark. Ev.* 53-4; Torrington's Case, 1 *Salk.* 285 ; Noble *v.* Kennaway,

[Rodgers v. Stophel.]

*Doug.* 492; 3 *Steph. N. P.* 2774–5; 2 *Kent Com.* 591; 1 *Smith Lead. Cas.* 101.

The opinion of the court was delivered by

CHURCH, J.—The plaintiff below sought to charge the defendant there as bailee. The character of the bailment, if any, was a question in issue before the court on the trial. The first error assigned here is, the admission of the testimony of the witnesses Dill and Duncan; and, although it is not as specific as the rule of court requires, and might for that cause alone be passed without notice, yet it has received due consideration.

The rules of evidence having their foundation in common sense, are in some respects subservient to the general interests and convenience of society; and, consequently, admit of such reasonable modified application as will best adapt them to the actual condition of the business of men. The general principle undoubtedly is, that the evidence, to be competent, must correspond with the allegations, and be confined to the point in issue. Yet, all collateral facts that are in any direct manner capable of affording a reasonable presumption or inference, as to the principal fact or matter in dispute, are competent subjects of proof. And, therefore it is, that sometimes other facts similar to those directly in issue, are receivable in evidence: 1 *Greenl. Ev.* §§ 52, 53. It is not doubted that, in the trial of this cause, it was material for plaintiff to show that his alleged bailee occupied the relation to him of a wharfinger. What constitutes this relation is as well defined by law as that of warehouseman, or common carrier, and may be established by the same kind of proof.

A wharfinger, then, is one who keeps a wharf for receiving goods for hire. And his responsibility begins when the goods are delivered at, or rather on, the wharf, and he has either expressly, or by *implication*, so received them. In Fuller v. Bradley, 1 *Casey* 120, it is said, that one who holds himself forth to the public to carry for hire, is a common carrier, as much the first as any subsequent trip, and that it is for the jury to say from the whole evidence in the case, whether he is a common carrier, or a carrier by the job, hiring for the trip only. So, it has been held, that any man undertaking to carry the goods of all persons indifferently and generally, is a common carrier : Gordon v. Hutchison, 1 *W. & S.* 285. The Chief Justice, in the case just cited, uses this language : "A wagoner, who carries goods for hire, is a common carrier, whether this be his principal or only occasional business." Keeping these general principles in view, and not forgetting they are held applicable to common carriers, whose responsibility is greater than wharfingers; and it will be readily perceived that the exception taken below, to the competency or admissibility of evidence, cannot be sustained. The mere contract

of Rodgers with the witness would alone, perhaps, be irrelevant and inadmissible; but the testimony taken together goes much farther. And, having but one bill of exceptions, the testimony of both witnesses must be treated as one offer, and the objection a general one; hence, if any portion of their testimony be competent for any purpose, a special objection cannot avail the party now: Harmet *v.* Dundass, 4 *Barr* 178, 181; Fitler *v.* Eyre, 2 *Harris* 392. The witness, Dill, proves that the wharf had been previously used by the public, as we would understand, without objection or charge by the owner; but, previous to the occurrence in question, the latter informed him he would not suffer it so any longer, but should charge a specified sum per thousand feet. In legal parlance, this compensation is called wharfage. But Duncan testifies more. He says that Rodgers invited him to use his wharf, and informed him of the rate of compensation he charged. The witness demurred to this, and told Rodgers he could do better, by delivering his lumber at Barber's, a short distance above, where it was free ground, as it is said. Rodgers replied, if he did so, it would likely be stolen; but, *if put upon my wharf, it will be safe*. This, certainly, afforded some evidence of the relation he stood in to those using his wharf. It was not the offer of any special engagement or undertaking with the witness particularly, but rather, in the language of the authorities cited, the holding himself forth as a wharfinger receiving lumber on his wharf, for hire, at a given rate, from all persons, indifferently and generally. The value or strength of the testimony is not the question; but, could it afford any rational inference in connection with the other evidence in the cause, that defendant kept a public wharf, and offered himself to the public as a wharfinger, previous to the time of receiving there the plaintiff's lumber? We think it could, and therefore the court below were right in overruling the objection to it.

The two remaining errors assigned, embrace but one and the same principle. And the discussion of the first, and the answer already given, is a substantial overruling of these. Whether there be any evidence, is for the court; but whether enough, was here properly submitted to the jury. If there be any evidence upon the issue, however slight, it will in general, not be deemed error to leave it with the jury, Inman *v.* Kutz, 10 *Watts* 101, and many other cases. No specific instruction being demanded of the court, nor special exception taken at the time, the whole charge should be taken together. The jury were distinctly instructed, in immediate connection with that part assigned for error, that if they found the contract or relation of the parties only extended to the right to occupy the ground, then defendant was not liable. What follows of the charge that embraced in the specification here, is but little, if anything, more than a legal

[Rodgers *v.* Stophel.]

definition of the term wharfinger. If they found him such, then the law implied the rest, unless his liability was limited by the evidence. We perceive no material error in this. There was evidence (the sufficiency of it we have seen is immaterial now here), from which it might be inferred, that defendant was a bailee for hire, and by general engagement liable to extend over plaintiff's lumber, like that of others, ordinary care and protection. What is meant by ordinary care, was properly explained and defined. It is such as the generality of mankind use in their own affairs. This is required when the contract of bailment, express or implied, is reciprocally beneficial. This kind of care and skill is by law required of all persons employed in any business: 1 *W. & S.* 60. We see no error in the part of the charge brought to our notice, nor in the exception to the evidence.

Judgment affirmed.