## Brower, to use, Appellant, *v.* Employers' Liability Assurance Company, Ltd.

Argued January 28, 1935. Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*R. L. Levy,* for appellant.

*Paul G. Collins,* with him *M. J. Martin,* for appellee.

OPINION BY MR. JUSTICE KEPHART, April 1, 1935:

An automobile owned by Miss Leslie Wenzel needed some adjustments about the body to remove squeaks and rattles. Arthur Brower, a professional chauffeur and mechanic who did repair work at his home, took the car from Miss Wenzel, at her request, for the purpose of making these adjustments. While the car was undergoing repair, Brower, accompanied by his father and a young lady to whom he was engaged, drove it to Bloomsburg, some sixty miles from where he lived. On their return the car met with an accident. Brower, Sr., and his son's intended bride were injured. She died some ten days later as the result of that injury. The accident occurred January 8th, and was reported to the insurance company January 28th. In the action instituted by the father against the son a judgment was entered against the latter. It not being paid the present suit was instituted on a policy of indemnity insurance carried by the appellee on Miss Wenzel's car. The carrier denied liability. The jury at the trial were unable to agree and were discharged. Whereupon, appellee moved for a judgment on the entire record. The court below entered such judgment, and Brower takes this appeal.

442

The policy of insurance was unquestionably intended to indemnify the insured against liability resulting from an accident due to the use or operation of the car. It does not matter under what circumstances that liability might arise. The insured may even be protected against acts of the driver or his own acts that may involve a criminal statute; generally accidents are due to the violation of some law legislatively declared as of criminal aspect, as, for illustration, fast or reckless driving, but insurance policies have always been treated as effective and valid under those circumstances. This was the intended purpose of the policies when issued: Messersmith v. American Fidelity Co., 232 N. Y. 161, 133 N. E. 432; Zurich General Accident and Liability Ins. Co. v. Thompson, 49 Fed. [2d] 860.

When Brower was engaged to repair the Wenzel car, and it was delivered to him, these acts constituted a bailment of the car for the special purpose and any acts coming within the purpose were within the scope of the bailment. It was for the mutual benefit of both parties: Zell v. Dunkle, 156 Pa. 353, 27 Atl. 38; Gamber v. Wolaver, 1 W. & S. 60. Brower then was in lawful possession of the car under color of authority. There may be circumstances of control and direction by the bailor in the specific purpose for which the car was given that would cause the bailor to be liable for a bailee's negligent acts (General Motors v. B. & O. R. R., 97 Pa. Superior Ct. 93; Funston v. Ingenito, 282 Pa. 124), and had such circumstances been present in this case, the carrier under the policy would have been required to respond for any monetary loss suffered by Miss Wenzel, the bailor. This was so stipulated in the policy, but the necessary elements to establish such liability are here entirely lacking; under the ordinary rule that applies the bailor would not be liable in damages for the negligence of the bailee or his servants: McColligan v. P. R. R. Co., 214 Pa. 229; Scheel v. Shaw, 60 Pa. Superior Ct. 73, affirmed 252 Pa. 451;

Beckman v. Meadville Ry. Co., 219 Pa. 26, 30; Lang v. Hanlon, 305 Pa. 378.

But the bailee contends that, notwithstanding this relation between the parties and the total absence of common law liability, he and those whom he injures are brought within the protective features of the policy. The policy covers not only the named assured but another group of persons termed "additional assured." Such persons may have no insurable interest in the car as such, and when the policy was written they may not have been thought of as a class and as parties therein. The named assured is in no way responsible or liable in damages for their injuries or those they occasion.

This protective feature for the real benefit of the injured person, though it indemnifies the assured and the additional assured, is embodied in the omnibus clause of the policy. If the person responsible for the accident is within the group of additional assured it is sufficient that he becomes legally liable to others for the injury, but, to bring one's self within the additional assured, it must be shown that the necessary relationship exists between the named assured and the person who causes the injury. This omnibus clause will be found in the footnote.*

---

* "V. Omnibus Cover. This policy shall cover the assured named in the Policy and any person or persons while riding in or operating any of the automobiles described herein and the protection granted by this Policy is so extended as to be available in the same manner and under the same conditions as it is available to the named Assured, to any person, firm or corporation legally responsible for the operation of such automobiles, provided such use or operation is with the permission of the named Assured, or if the named Assured is an individual, with the permission of an adult member of the named Assured's household other than a chauffeur or a domestic servant; except that the protection granted by this Policy shall not be available to a public automobile garage, automobile repair shop, automobile sales agency, automobile service station and the agents or employees thereof.

"The unqualified term 'Assured' wherever used in this Policy shall include in each instance not only the name Assured but also any other person, firm or corporation entitled to protection under the

For liability to attach in any event under an omnibus clause of this type, the operator must be shown to have obtained possession of the car lawfully and with the permission, express or implied, of the named assured; if there is a complete lack of permission to use the car for any purpose, the operator is clearly not within the coverage of the policy: Morin v. Travelers Ins. Co., 85 N. H. 471, 160 Atl. 482; Globe Indemnity Co. v. Nodlere, 69 Fed. [2d] 955. The necessary permission may be in the form of express or implied affirmative consent or it may result by implication from the relationship of the parties or a course of conduct in which the parties have mutually acquiesced: Maryland Casualty Co. v. Ronin, 37 Fed. [2d] 449; see Kazdan v. Stein, 26 Ohio App. 455, 160 N. E. 506, affirmed in 118 Ohio 217, 160 N. E. 704.

The chief difficulty encountered by the various courts which have considered clauses substantially similar to the one in question relates to the scope to be given the word "permission" contained in the clause. One class takes the position that an indemnity or liability insurance policy is intended to protect any person injured by the legitimate operation of the car regardless of how or where the accident took place and regardless of whether the operator of the car was, at the time of the accident, using it for the restricted purpose for which it had been delivered to him in the first instance. In view of these authorities a deviation, material or otherwise, from the terms of the bailment does not place the operator beyond the protection of the policy; "permission" is construed as applying solely to the bailee's right to the possession of the car in the first instance and is not limited by any restrictions or conditions the owner may impose on the use of the car: Dickinson v. Maryland Casualty Co., 101 Conn. 369, 125 Atl. 866; Stovall v. New York Indemnity

preceding paragraph, but the qualified term 'named Assured' or 'Assured named in the Policy' shall apply only to the Assured named and described as such in the Policy."

Co., 157 Tenn. 301, 8 S. W. [2d] 473; Peterson v. Maloney, 181 Minn. 437, 232 N. W. 790. This construction of the policy is in accord with the purpose of the various statutes adopted by several states requiring owners of automobiles to carry indemnity insurance. These statutes are enacted as a protection to the public using the streets and highways as a matter of public policy. The aim of the legislation is to protect those injured by automobiles, no matter who may be driving the car or where it is driven, provided the owner has voluntarily entrusted possession of the car to the driver for some purpose, and regardless of whether the person in possession of the car observes or breaks the contract of bailment. See O'Roak v. Lloyds Casualty Co., 189 N. E. 571 [Mass.]; Guzenfield v. Liberty Mutual Ins. Co., 190 N. E. 23 [Mass.]; Boudreau v. Maryland Casualty Co., 192 N. E. 38 [Mass.]; Drewek v. Milwaukee Automobile Ins. Co., 240 N. W. 881 [Wis.]; cf. Sauriolle v. O'Gorman, 86 N. H. 39, 163 Atl. 717. The legislature in this Commonwealth has adopted such a statute but its application is limited to specified situations: Act of May 15, 1933, P. L. 553.

Another line of authorities places a restricted construction on such omnibus clauses in indemnity policies and confines liability thereunder to such accidents as occur while the car is being used for the specific purpose for which permission to operate the car was granted; if there is a material deviation by the operator from the purpose or terms of the bailment, the insurance company is not liable to an injured party: Denny v. Royal Indemnity Co., 26 Ohio App. 566, 159 N. E. 107; Fredericksen v. Employers' Liability Assurance Corp., 26 Fed. [2d] 76; Kazdan v. Stein, supra; Johnson v. American Automobile Ins. Co., 131 Me. 288, 161 Atl. 496; Trotter v. Union Indemnity Co., 35 Fed. [2d] 104; see also Johnston v. New Amsterdam Casualty Co., 200 N. C. 763, 158 S. E. 473. In these cases the fact that the driver has possession of the car under a color of authority seems to have been lost sight of in determining the meaning of the word "per-

mission" as used in the omnibus clause, the controversies hinging about where "permission" in the sense of specific authority stops, and "unauthorized use" steps in, so as to relieve the insurance carrier from liability.

This court has not definitely laid down any rule on the subject, but it must be said that there is much force in the argument that as indemnity insurance on automobiles has become quite general, some attention should be given to the fact that the accident occurs while one has possession of the car under color of authority. The owner puts the car in the control of the user and in his power to do the act complained of. Such adherence would bring all indemnity insurance within the lines adopted by the legislatures of the several states. It would seem that the very purpose these insurance policies are taken or required to be taken out is to give any person whose injuries are deemed by law to have been caused solely by the operation of an automobile some safe place for redress.

The word "permission" has a negative rather than an affirmative implication; that is, a permitted act may be one not specifically prohibited as contrasted to an act affirmatively and specifically authorized. That it appears in automobile policies would indicate that anyone having permission or color of authority is included within the clause. The insured is interested in protecting those who may be injured by his car, and when he lends it to another, he has sufficient confidence in the other that he will not wilfully destroy or injure any member of the public.

While the omnibus feature of the policy may be divided into three parts, first, "This policy shall cover the Assured named in the policy and any person or persons while riding in or operating any of the automobiles described herein," and, second, "the protection granted by this Policy is so extended as to be available in the same manner and under the same conditions as it is available to the named Assured, to any person responsible for

the operation of such automobile, provided such use or operation is with the permission of the named Assured or with the permission of an adult member of the named Assured's household," their effect is the same. It was certainly not the intention of the parties in using the term "operating" in the first clause to include any person stealing the car and operating it.

The "permission" permeates the entire clause; it is intended to apply equally to "any person . . . operating any of the automobiles" as to any person legally responsible for the operation of such automobiles. If this were not so, an unauthorized use of the car by one engaged in doing an act under the direction and for the benefit of a third party who would be responsible for his action under the doctrine of respondeat superior, would be covered by the policy, while the third party, his principal, would not be covered. "Permission" of some sort by the named assured is necessary to bring either part of the clause into operation. They were intended to be broad and sweeping. That they were intended to be so is found not only by what has been discussed but in the concluding or excepting part of the omnibus clause, the third part which reads, "except that the protection granted by this policy shall not be available to a public automobile garage, automobile repair shop . . . and the agents or employees thereof." Under the maxim expressio unius exclusio alterius it would seem that every other person, firm or corporation operating the car with color of authority than those within the specified class who are excluded are impliedly under the coverage of the policy. If, however, the operator finds himself within the specified class, he and those whom he injures are outside the omnibus clause and the insurance company is not responsible for any loss under the policy.

Before considering whether Brower is within the specified class, we shall discuss briefly the deviation feature.

Miss Wenzel testified that when she gave the car to Brower to be repaired, she expected Brower would drive

the car in the course of his work to determine whether the rattles or squeaks were removed. Brower testified that one of his reasons for the trip to Bloomsburg was to invite two friends to his wedding, and that his father accompanied him, taking a bird dog to be delivered to a friend; that the trip to Bloomsburg was for the purpose of arranging for his wedding, or business of his own.

There is no doubt that Brower had possession of the car under color of authority. His bailment predicated that; and he was required to drive the car to ascertain if he had gotten rid of the noise and rattle. Conceding then that the delivery of the car to this mechanic was an authority or permission to use the car within the scope of the bailment, there was nevertheless a deviation from the specified purpose, that is, there was no necessity to go to Bloomsburg; it placed the operation of the car clearly outside of any permissive use. It is unnecessary to decide at what point this unauthorized use took place. The extent of the deviation took it outside the zone of doubt. Consequently, if the case were within the deviation class the evidence would bring it so far within it that the court below should have so decided as a matter of law.

But the exception in the omnibus clause reads: "except that the protection granted . . . shall not be available . . . to an automobile repair shop." The purpose and the intention was to exclude those engaged in repairing cars from the policy's benefits. This is obvious. Without any control from the owner as to the selection of the driver, the place driven, and the manner of driving, the repair man having this entirely in his control, the hazard was evidently too great for the indemnity companies to assume, and therefore that hazard was excluded.

In using the term "automobile repair shop" the policy did not mean an inanimate thing, but it was intended to exclude those engaged in the business of repairing automobiles, as this mechanic was, and under the most restricted use given to the words of the policy a repairman of automobiles, engaged in that business, was intended

to be excluded from the risks assumed by the indemnity companies. He is expressly excluded. See Alberga v. Penna. Indemnity Corp., 114 Pa. Superior Ct. 42. The judgment of the court below was proper.

Judgment affirmed.

CONCURRING OPINION BY MR. JUSTICE DREW:

The judgment of the court below is right and must be affirmed. I am constrained to disagree, however, with the reasoning in the majority opinion.

The omnibus clause of the policy in suit extends protection to certain parties other than the named assured who may use the car, "provided such use or operation is with the permission of the named assured." While it is true that permission to remove the rattles conferred the right to drive the car within reasonable limits to accomplish this purpose, it is equally clear that it did not extend to the operation of the car upon a round trip of over 120 miles in the darkness of the night. The evidence shows unquestionably that the trip was for the driver's own purposes.

By no permissible construction of the terms of the policy can it be said that at the time of the accident the car was being used with the permission of the assured. The "use or operation . . . with the permission of the named assured" refers to the time of the casualty and not to the time of granting consent: Johnson v. Am. Automobile Ins. Co., 131 Me. 288; Johnston v. New Amsterdam Cas. Co., 200 N. C. 763. Where the owner allows another the use of his car for a specific purpose, restriction to such purpose is clearly implied. Express permission for a given purpose does not imply permission for all purposes. The weight of authority has consistently denied recovery in cases similar to the present: Powers v. Wells, 115 Pa. Superior Ct. 549; Truex v. Ins. Co., 116 Pa. Superior Ct. 551; Frederiksen v. Employers' Liability Assur. Corp., 26 F. (2d) 76; Bowen v. Cote, 69 F. (2d) 136; Globe Ind. Co. v. Nodlere, 69 F. (2d) 955; Johnson v. Am. Au-

tomobile Ins. Co., supra; Kazdan v. Stein, 26 Oh. App. 455 (affirmed 118 Oh. St. 217); Denny v. Royal Ind. Co., 26 Oh. App. 566; see Trotter v. Union Ind. Co., 35 F. (2d) 104. This is in my opinion the only sound rule.

The basis for the majority's last conclusion is unsound. To say that one regularly employed as a chauffeur who during his spare time undertakes to repair the car of a third person is, without more, an "automobile repair shop" or an agent or employee thereof, within the meaning of the policy, is to strain the construction of plain language. In view of the broad interpretation of "permission" suggested by the majority opinion, the effect of which would be to enlarge the insurer's liability, such an all-inclusive interpretation of the exceptions in favor of the insurer is remarkable. It is to be noted that this ground, upon which the majority rests its decision, was not presented or suggested in the briefs nor argued at the bar. I think the case should be decided, as it was in the court below, solely on the ground of use and operation without the permission of the assured, which was a clear violation of the terms of the policy. In my opinion that is the only ground upon which the judgment of the court below can properly be affirmed.

Mr. Justice SCHAFFER joined in the concurring opinion.