PER CURIAM.
Gordon E. Paige, Jr. and his wife, Elizabeth Paige (“Paige”), appeal the declaratory judgment in favor of Nationwide Mutual Insurance Company (“Nationwide”). Nationwide alleged that there was no coverage for injuries sustained by Paige as the result of an accident with a pick-up truck owned by Frank Cox, Nationwide’s insured, because the vehicle had been surrendered to a repairman, William Lawrence Gossom, for repair work. Gossom was operating the vehicle at the time of the accident. We affirm.
Gossom is a professional mechanic who was entrusted with the car to make repairs and to start the car, but who was not authorized to move it from the repair site. At the time of the accident, he was moving the ear to a shaded area. Although in the past Gossom had operated a repair shop out of a garage, he was not working out of a garage, building, or • permanent structure on the day of the accident. He worked at a site on the side of the road at least three days of the week. The sign he posted at the site stated “Mechanic on Duty 8:00 to 5:00.” Paige argues that the fact that Gossom had no building or shop makes him a “shade tree mechanic” or “itinerant mechanic” and not one excluded from coverage. In its complaint for declaratory relief against Gossom and Paige, Nationwide alleged that the Cox vehicle was excluded from coverage under the insurance policy because it was being operated by a “repair shop” or “service station” at the time of the accident. The Nationwide insurance policy specifically excluded from coverage “any person for any occurrence” arising from the operation of a “repair shop” or “service station.” [1]
The only issue in the case is whether Gos-som was operating a “repair shop” at the time of the accident with Paige. If he was, there is no coverage because Florida law has long held such exclusions reasonable in light of the risks associated with repair persons operating an insured’s vehicle. See Dixie Auto. Ins. Corp. v. Mason, 155 So.2d 172 (Fla. 1st DCA 1963); State Farm Fire & Cas. Co. v. City Ins. Co., 759 F.Supp. 808 (S.D.Fla.1991). The parties agree that there is coverage if the exclusion does not apply. Paige contends that the ordinary meaning of repair shop means a building or a structure, and that, since Gossom was not operating from a building or a structure, the exclusion does not apply. Paige also contends that since neither the policy nor Florida case law defines the term “repair shop,” the term must be given its ordinary meaning. Further, Paige argues that if the term is ambiguous it must be strictly construed against Nationwide in favor of coverage. See Firemans Fund Ins. Co. v. Boyd, 45 So.2d 499 (Fla.1950). Nationwide argues that the term is not ambiguous and that a rational. construction is that Gossom was operating a *475 “repair shop” or “service station” even though he was not operating from a building.
We begin our analysis with Castillo v. Bickley, 363 So.2d 792 (Fla.1978). In Castillo, the supreme court held that when the owner of a motor vehicle surrenders it to a' repairman or serviceman, and the owner does not exercise any control over the vehicle, and it becomes involved in an accident caused by the repairman or serviceman “during the servicing, service-related testing, or transport of the vehicle,” the owner is not liable. Id. at 793. The basis of the court’s ruling was “social policy and pragmatism.” Id. The court wrote:
An automobile owner is generally able to select the persons to whom a vehicle may be entrusted for general use, but he rarely has authority and control over the operation or use of the vehicle when it is turned over to a firm in the business of service and repair. Moreover, an owner often has no acceptable alternative to relinquishing control of his vehicle to a service center, after which he has no ability to ensure the public safety until the vehicle is returned to his dominion.

Id.

In Michalek v. Shumate, 524 So.2d 426 (Fla.1988), the supreme court extended the holding in Castillo to negligence caused by a cleaning service. The Supreme Court declined to distinguish between types of service. Id. at 427. The court stated
The owner’s dilemma is the same regardless of the service offered. He has no more control over his vehicle’s use once delivered for cleaning than he has once delivered for transmission service.
Id. (emphasis supplied.) In this case, the vehicle was surrendered for service and its transport at the time the accident occurred was service-related. Based upon the activities of Gossom, the repairman, the Nationwide exclusion applies.
The determinative factor is not whether a building exists. Rather, we hold that the determinative factors are the type of work being done, the qualifications of the person doing the work, and the frequency with which the work is done. The reasoning in Castillo leads us to the conclusion that Gossom was operating a “repair shop.” .Today, many automobile dealers offer roadside service to their customers. They provide a toll free number and a mobile mechanic is dispatched to make repairs, if possible, wherever the motor vehicle is located. The motor vehicle is not towed to a shop, but the work is done in the field, where the mechanic may find it necessary to move the automobile. Independent contractors advertise that they will detail your car at your worksite or at your home, or replace your windshield or windows at your worksite or at your home. In fact, they may not have shops. Many are licensed to do the work and to generate income from their work. These businesses provide a professional service, but they own no building or service station. In this case, mechanic Gossom at one time owned a service station, but at the time of the accident did not. He worked regularly as a mechanic and advertised himself to be a mechanic. His place of work was known and he had a sign informing the public of his operating hours. He stored his tools in a shed at the place where he repaired motor vehicles. We therefore conclude that Gossom was operating an automobile repair shop.
Other jurisdictions have reached the conclusion we reach here. In Brower v. Employers’ Liab. Assur. Co., 318 Pa. 440, 177 A. 826, 830 (1935), the Pennsylvania Supreme Court determined that “[i]n using the term ‘automobile repair shop’ the policy did not mean an inanimate thing, but it was intended to exclude those engaged in the business of repairing automobiles.” In Brower, the owner entrusted an automobile to a professional chauffeur, who also worked as a mechanic, to make repairs at his home. Id. at 441, 177 A. 826. The mechanic was involved in an accident while the automobile was in his care. Id. at 441, 177 A. 826. The court held that the mechanic was engaged in the business of repairing automobiles and, therefore, was not covered by the policy pursuant to an exclusion clause that provided: “except that the protection granted ... shall not be available ... to an automobile repair shop.” Id. at 448, 177 A. 826. The court construed the term “automobile repair shop,” and held that the insurance company intended to use the term to exclude those engaged in the business of repairing automobiles from coverage *476 under the policy, regardless of whether they operated out of a building. Id. at 448-449, 177 A. 826; see also Public Indem. Co. of Newark, New Jersey v. Yearwood, 50 Ga. App. 646, 179 S.E. 232 (1935) (holding that exclusion applied even though repairman had no building, “there being no substantial difference, for the purposes of automobile liability insurance, between an individual undertaking to repair an automobile for the owner thereof and a ‘public garage’ or ‘automobile repair shop’ ”).
Paige also argues that the exclusion should not apply because Gossom was a part-time repairman. In National Farmers Union Property & Gas. Co. v. General Guar. Ins. Co., 150 Mont. 297, 434 P.2d 708 (1967), the court held that the operation of a repair shop need not be a full-time business where the exclusion provision did not so state. Id. 434 P.2d at 711. National Farmers involved a farmer who had repaired 11 automobiles in two and a half years, sometimes in his granary and other times elsewhere. The court found he did have a physical shop, but, more important for our consideration, it held that the exclusion could apply to someone who worked part-time. Id. We apply the same reasoning to the case before us. Even though Gossom worked at other jobs, the frequency of his work as an automobile repairman is sufficient for the exclusion to apply.
Because repairs and other services are being made at remote sites by qualified persons who work full and part-time, we think the better policy is not to consider only whether there is a building, but also to consider the type of work being done, the frequency of the work and the skill and training of the person doing the work. Here, Gossom was a professional mechanic who worked three days a week repairing cars, and he fact that the did not operate out of a building is of no moment.
AFFIRMED.
GOSHORN, GRIFFIN and THOMPSON, JJ., concur.

. COVERAGE EXCLUSIONS
This coverage does not apply to:
S ⅞ * :!' *
3. Any person for any occurrence arising out of the operation of an auto:
(a) repair shop;
(b) public garage or parking place;
(c) sales agency; or
(d) service station.