640 A.2d 1315

**William K. NASSER and Catherine Nasser, His Wife, Appellees,**

v.

**EMPIRE SANITARY LANDFILL, INC. its Successors, Grantees, Devisees and Assigns, and any and all Persons Claiming by Through or From the Aforesaid Entity, Appellant.**

Superior Court of Pennsylvania.

Argued Feb. 9, 1994.

Filed March 31, 1994.

Reargument Denied June 3, 1994.

Charles W. Bowser, Philadelphia, for appellant.

Gene E. Goldenziel, Scranton, for appellees.

Before KELLY, POPOVICH and HESTER, JJ.

POPOVICH, Judge:

This case involves an appeal from the order of the Court of Common Pleas of Lackawanna County denying a motion to dismiss by the defendant/appellant, Empire Sanitary Landfill. We affirm in part and quash in part.

. The facts of record evidence that the plaintiffs, William K. and Catherine Nasser, his wife, filed a complaint to quiet title, as well as a petition for a temporary restraining order and preliminary injunction, against the defendant. In the complaint, the plaintiffs averred that they conveyed to the defendant's predecessor, by deed, the right to extend the width of the base of a roadway adjacent to their property, beyond the then existing 40–foot width. However, the defendant maintained that this right of extension entitled it to expand the roadway from the 40–foot limit to the intended 100–foot width for a distance of approximately 680 feet, which would create a driveway traversing the plaintiffs' property.

With regard to the petition seeking injunctive relief, a rule was issued and made returnable on July 1, 1991. An answer with new matter and counterclaim was filed by the defendant. A hearing was conducted on July 1 and 9, 1991, at which the litigants "agreed" to hold in abeyance the taking of testimony pending the Commonwealth of Pennsylvania, Department of Transportation's (PennDOT) ruling on the defendant's amended application for a permit outlining its expansion of the disputed roadway onto the plaintiffs' property. If the amendment were denied, the suit would be mooted.

However, when PennDOT granted the defendant's permit, the plaintiffs returned to court and sought a continuation of their initial petition for injunctive relief. The basis for their request for injunctive relief was the defendant's engagement in the following: 1) violation of an easement denying the plaintiffs the ability to travel by foot across their property; 2) placement of utility poles over the plaintiffs' easement was contrary to the July, 1991 hearing agreement; and 3) place-

ment of concrete barriers, trees and other plants over the easement obstructed the plaintiffs' foot-path.

In response, the defendant filed a motion to dismiss for lack of subject matter jurisdiction and for failure to join an indispensable party (PennDOT). The motion was denied and this appeal ensued. At oral argument, the plaintiffs filed a motion to quash the defendant's appeal as interlocutory.

■ In this Commonwealth,

[w]hether an order is final and appealable cannot necessarily be ascertained from the face of a decree alone, nor simply from the technical effect of the adjudication. The finality of an order is a judicial conclusion which can be reached only after an examination of its ramifications. * * * [A] finding of finality must be the result of practical rather than a technical construction. *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, [546–48], 69 S.Ct. 1221, 1226, 93 L.Ed. 1528 (1949).

*Bell v. Beneficial Consumer Discount Co.*, 465 Pa. 225, 348 A.2d 734, 735 (1975) (Footnote omitted). An order is also deemed final if it precludes a party from presenting the merits of his/her/its claim to the trial court. *Lansdowne v. G.C. Murphy Co.*, 358 Pa.Super. 448, 517 A.2d 1318 (1986).

■ Instantly, the appellant argues that the court's denial of its motion to dismiss is a final order since it "prevent[s] Empire from proving or otherwise foreclose[s] affirmative and complete defenses on the merits of the Nassers' claims for equitable relief in the action to quiet title . . . ." Appellants' Answer to Motion to Quash Appeal, Paragraph 2.

■ We take no issue with the appellant's general statement that a pre-trial order precluding a defendant from presenting proof of or otherwise foreclosing an *affirmative defense* on the merits is an appealable final order. *See, Com. of Pa., DER v. Wheeling–Pittsburgh Steel Corp.*, 473 Pa. 432, 375 A.2d 320, 323 (1977), wherein the Court held a refusal to allow evidence of a "possibly" meritorious defense effectively

put the appellant out of court, and, therefore, the order was "final" for appeal purposes.

At bar, we have examined the appellant's Answer to Motion to Quash Appeal and come away with no insight as to the substance of the alleged "affirmative defenses". In the absence of elaboration as to the basis for the claim sought to be reviewed, we are left to respond to issues framed in a vacuum. This we will not do. Cf. *Commonwealth v. Pettus,* 492 Pa. 558, 424 A.2d 1332 (1981).

■ The failure to raise an "affirmative defense" (considered compulsory in pleading practice) will result in a waiver of the defense. See *Zarnecki v. Shepegi,* 367 Pa.Super. 230, 532 A.2d 873, 875 (1987). In the same vein, the absence of any articulation for such an affirmative defense leaves one with no choice, as is the case here, but to find the averment meritless.[1]

■ Alternatively, the appellant argues that the denial of its Motion to Dismiss was contrary to the "consent order" entered by the court on July 9, 1991, a by-product of the hearing conducted on July 1 and 7 of 1991 in which the parties agreed to postpone the presentment of evidence covering the request for an injunction until after PennDOT had ruled on the appellant's supplemental highway permit seeking expansion of its roadway onto the appellees' property.

Albeit this "consent order" issue is collateral to the main cause of action (petition for injunction), it *may* await resolution for it does not involve a right that will be irreparably lost if review is postponed until the petition for injunction is decided by the court below.[2] See *Cohen v. Beneficial Indus-*

---

1. Initially, we make inquiry of the issue because the opportunity to assert an "affirmative defense" might bring closure to a case without the need to litigate the matter fully. Stated otherwise, this protects the affirmative-defense-raising-party from having to expend unnecessary time and money in defending against a cause of action. Also, this cuts short the necessity of having to go to trial by raising the defense in pre-trial pleadings. Cf. *Commonwealth v. Kotz,* 411 Pa.Super. 319, 601 A.2d 811, 814 (1992); Pa.R.Civ.P. 1032(2).

2. We would note that, at the July, 1991 hearing, the appellant acknowledged that if its amended highway permit were granted, the appellees would have the "right" to return to court and reactivate their petition

*trial Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949); *Bell v. Beneficial Consumer Discount Co.,* supra. At that time, the appellant can raise the issue, and, if the injunction is granted, challenge the matter on appeal. See Pa.R.App.P. 311(a).

■ Lastly, the appellant contends that the court below is without subject matter jurisdiction [3] with the appellees' failure to appeal PennDOT's ruling. *See, e.g.,* 2 Pa.C.S.A. § 702 (Right to appeal by aggrieved party of a Commonwealth agency adjudication); 42 Pa.C.S.A. § 763 (Direct appeals from government agencies); *Popple v. Com. of Pa., Dept. of Transp.,* 133 Pa.Cmwlth. 375, 575 A.2d 973 (1990). The argument posed is mis-labelled (as one of "subject matter jurisdiction") and is more appropriately described as one of primary jurisdiction (or primary exclusive jurisdiction). This doctrine has been defined by our Supreme Court in *Elkin v. Bell Telephone Co. of Pennsylvania,* 491 Pa. 123, 420 A.2d 371, 376 (1980) thusly:

Essentially, the doctrine [of primary jurisdiction] creates a workable relationship between the courts and administrative agencies wherein, in appropriate circumstances, the courts can have the benefit of the agency's views on issues within the agency's views on issues within the agency's competence. This Court has approved the doctrine in *Weston v. Reading Co.,* 445 Pa. 182, 282 A.2d 714 (1977 [1971] ) (equity court must defer to Interstate Commerce Commission). In *Weston,* we stated:

The principles of the doctrine of primary jurisdiction are well settled. The United States Supreme Court "... recognized early in the development of administrative agencies that coordination between traditional judicial machinery and these agencies was necessary if consistent and coherent

for injunctive relief because, at that point, the appellees would not have an adequate remedy at law. RR. 147.

3. This question of subject matter jurisdiction, if applicable, would have deprived the Common Pleas Court of jurisdiction, and, as such, could have been raised at any time. *LeFlar v. Gulf Creek Industrial Park No. 2,* 511 Pa. 574, 515 A.2d 875 (1986); Pa.R.Civ.P. 1032(2).

policy were to emerge.... The doctrine of primary juris-
diction has become one of the key judicial switches through
which this current has passed." The doctrine "... requires
judicial abstention in cases where protection of the integrity
of a regulatory scheme dictates preliminary resort to the
agency which administers the scheme."

*The doctrine serves several purposes, chief of which [is]
the benefits to be derived by making use of the agency's
special experience and expertise in complex areas with
which judges and juries have little familiarity.*

\* \* \* \* \* \*

It is equally important to realize what the doctrine is not-
it is not simply a polite gesture of deference to the agency
seeking an advisory opinion wherein the court is free to
ignore the agency's determination. Rather, once the court
properly refers a matter or a specific issue to the agency,
that agency's determination is binding upon the parties
(subject, of course, to appellate review through normal
channels), and is not subject to collateral attack in the
pending court proceeding. "The common law doctrine of
res judicata, including the subsidiary doctrine of collateral
estoppel, is designed to prevent the relitigation by the same
parties of the same claim or issues." *Once the administra-
tive tribunal has determined the issues within its jurisdic-
tion, then the temporarily suspended civil litigation may
continue, guided in scope and direction by the nature and
outcome of the agency determination.* [Emphasis added;
citations omitted in part]

█ In light of *Elkin*, our inquiry is not whether the trial
court had subject matter jurisdiction to entertain this dispute.
Clearly, it did. The complaint to quiet title and petition for
injunctive relief sought to declare the plaintiffs as the legal
owners of a parcel of land and to enjoin the defendant from
encroaching on the property, respectively. *Cf. Ostrov v.
I.F.T., Inc.*, 402 Pa.Super. 87, 586 A.2d 409, 414 (1991).

Although PennDOT had the authority to *deny* the appel-
lant's amended highway application, which would have ren-

dered the need to address the appellees' request for a preliminary injunction moot,[4] the absence of such a course of conduct left open the resolution of the appellees' quiet title complaint (*which could not be resolved by PennDOT*) and heightened the need to address the appellees' injunctive issue. *See* Pa.R.Civ.P. 1061 *et seq.* (Action to Quiet Title); Rule 1531 (Special Relief, Injunctions).

In a case in which an aggrieved property owner sidestepped a zoning board to resolve a dispute and proceeded to court to enjoin its neighbors' violation of a zoning ordinance, our Supreme Court held that the complainant did not have to exhaust its administrative remedies before opting to seek relief via the courts. In doing so, the Court made remarks which we find to be instructive; to-wit:

Where deliberate violations of a zoning ordinance have the effect of wrongfully infringing on the property rights of a neighbor, that neighbor is entitled to prompt vindication in the court of equity without regard to alternate administrative remedies that might be available.

\* \* \* \* \* \*

... Exhaustion is not an absolute doctrine. *Feingold v. Bell of Pa.*, 477 Pa. 1, 383 A.2d 791 (1977). Whether a court ought to apply the exhaustion doctrine in a given set of circumstances is itself a matter of the exercise of judgment and sound discretion. *Feingold v. Bell of Pa.*, *supra.* The availability of an administrative remedy does not deprive a court of the power to entertain claims challenging the agency's failure to afford the required remedy; and the availability of the administrative remedy bears only on the appropriateness of granting the relief requested. \* \* \* [C]ourts are as well equipped to apply a written ordinance to a given set of facts as is any municipal authority. In

---

4. We do not believe that a "grant" of the amended application would have brought about the same result—mootness of the injunctive issue— as proffered by the appellant. In fact, this position is contrary to the appellant's statements at the July, 1991 preliminary injunction hearing. See RR. 147.

short, there is no reason to apply the exhaustion doctrine here.

*Frye Construction, Inc. v. City of Monongahela,* 526 Pa. 170, 584 A.2d 946, 948–49 (1991) (Citations omitted in part).

 Consistent with *Frye,* we focus on the nature of the issue sought to be resolved, and, if the issue is within the governmental agency's jurisdiction and is a *complex matter requiring special competence,* it should be referred to the agency. *See Elkin v. Bell Telephone Co. of Pennsylvania, supra.* However, a court should not be too hasty in referring a matter to an agency when the court is *equally capable* of resolving it. *Id.; Ostrov v. I.F.T., Inc., supra.*

In applying these general principles here, we observe that the preliminary injunction question was stayed so that, had PennDOT denied the appellant's amended application for a highway permit traversing the appellees' property, the dispute could have come to an end. Additionally, the trial court and the parties did not seek the peculiar expertise of PennDOT to resolve a *complex* dispute concerning property rights, for the quiet title action was reserved for the court to decide, and it alone had the power to enjoin. *See* Rules 1026 & 1529.

Further, amelioration of the encroachment question was tangential to the amended highway permit issue, and the question of title ownership to property was not to be decided by PennDOT. As stated earlier, resolution of the permit issue against the appellant's interest would have dispensed with the need to proceed with the preliminary injunction and/or the action to quiet title.

However, with PennDOT ruling against the appellees' interest, they were not precluded from returning to court to seek re-activation of their dual causes of action (quiet title and injunction), the former of which was peculiarly within the bailiwick of the trial court to decide as a matter of law. And, as an adjunct thereto, this would allow for the entry of an injunctive order if the conditions warranted such immediate relief pending completion of the quiet title action. *Id.*

Consequently, we find that the denial of the Motion to Dismiss for want of subject matter jurisdiction is meritless, and, therefore, does not place the appellant "out of court". *T.C.R. Realty, Inc. v. Cox,* 472 Pa. 331, 372 A.2d 721 (1977). Nor is the appellant prohibited from presenting the merits of its case in defense of the requested injunction or quiet title action. Cf. *Lansdowne v. G.C. Murphy, Inc., supra.*

In contrast, we find the appellant's claim that the Motion to Dismiss should not have been denied for the appellees' failure to join an indispensable party (PennDOT) is an issue which, unlike the "consent order" allegation, may not await disposition until the court below addresses the preliminary injunction and quiet title action.

To explicate, under Pennsylvania Rule of Civil Procedure 1032, failure to join an indispensable party is a ground to dismiss an action. As such, we need to examine the merits of the "indispensable party" claim, and not postpone its resolution until after the quiet title and/or injunction question is decided, for it may be that PennDOT's involvement is *integral* to a resolution of either or both the law (quiet title) and equitable (injunction) action. *See Insurance Company of the State of Pennsylvania v. Lumbermens Mutual Casualty,* 405 Pa. 613, 177 A.2d 94 (1962).

We find that, consistent with the requirements necessary to be labelled as an indispensable party, *see Grimme Combustion, Inc. v. Mergentime Corp.,* 406 Pa.Super. 620, 595 A.2d 77 (1991), PennDOT does not so qualify. For example, resolution of the quiet title action does not necessitate the inclusion of this governmental agency to settle the dispute. *See Lumbermens Mutual Casualty, supra.* And, as for the issuance of an injunction, PennDOT is only tangentially involved by having issued a permit allowing the appellant to engage in, allegedly, expansion of the roadway onto the appellees' property. This authorization (and the basis for its issuance—in written form) may be submitted into evidence and argued by the appellant without the necessity of PennDOT being made a party to the suit. If need be, PennDOT may be called as a witness to

verify its issuance of the highway permit to the appellant, but it need not be given party status to achieve this result.

Accordingly, to the extent that the appellant appeals the order of the court denying its Motion to Dismiss for want of subject matter jurisdiction and failure to join an indispensable party, we affirm. However, to the extent that the appellant seeks appellate review of the same order on grounds that it is contrary to a "consent order", we quash.

For the reasons herein stated, we affirm in part and quash in part; jurisdiction is not retained.