643 A.2d 680

**David ADAMSKI and Kathy Adamski**

v.

**Ronald C. MILLER and Allstate Insurance Company.**

**Appeal of ALLSTATE INSURANCE COMPANY.**

**David ADAMSKI and Kathy Adamski, Appellants,**

v.

**Ronald MILLER and Allstate Insurance Company.**

Superior Court of Pennsylvania.

Argued Feb. 16, 1994.

Filed May 3, 1994.

Reargument Denied July 8, 1994.

Kent H. Herman, Allentown, for Allstate.

G. Christopher Parrish, Bethlehem, for Adamski.

Ronald Miller, pro se.

Before CIRILLO, BECK and JOHNSON, JJ.

CIRILLO, Judge:

This is an appeal and cross-appeal from the judgment entered in the Court of Common Pleas of Northampton Coun-

ty in favor of David and Kathy Adamski and against Allstate Insurance Company (Allstate) in the amount of $50,000.00. We reverse.

This case arises out of an automobile accident which occurred on July 19, 1984 in Easton, Pennsylvania. The accident in question involved a motorcycle and a passenger automobile. The motorcycle, owned and operated by David Adamski, collided with an automobile, a 1973 Chevrolet Nova (Nova), driven by Ronald Miller (Miller) and owned by Madalyn Gower (Gower). Gower's daughter, Patricia Dooley (Dooley), was a passenger in the automobile at the time of the accident.

The Adamskis commenced an action against Miller and Gower alleging physical injuries and loss of consortium resulting from the accident; the claim against Gower, however, was voluntarily discontinued prior to trial. After a jury trial, a verdict was rendered in favor of the Adamskis and against Miller in the amount of $305,000.00.[1]

The Adamskis then instituted the instant garnishment action against Allstate claiming that Miller was insured under the Allstate policy covering Gower's automobile. Allstate denied coverage based on its contention that Miller was not a permissive user of the Nova at the time of the accident. After a non-jury trial, the Honorable Michael V. Franciosa found that Miller had Gower's (the insured's) implied consent to use the Nova and, therefore, entered a verdict in favor of the Adamskis and against Allstate in the amount of $50,000.00, the limits of Allstate's liability under the policy issued to Gower.

Allstate filed post-trial motions seeking judgment notwithstanding the verdict (j.n.o.v.) or, in the alternative, a new trial. See Pa.R.C.P. 227.1. Allstate argued in its motion that: (1) the evidence presented at trial did not support the trial court's finding of implied consent to operate the Nova; and (2) the trial court made improper use of a transcript of juvenile proceedings involving Miller. Shortly thereafter, the Adam-

1. Of this $305,000.00 verdict, $265,000.00 was awarded to David Adamski for his physical injuries and the remaining $40,000.00 was awarded to Kathy Adamski on her loss of consortium claim.

skis filed a motion to mold the verdict, requesting pre-judgment and post-judgment interest on the amount of the verdict. By the order dated August 5, 1993, Judge Franciosa denied both motions. This timely appeal followed.

On appeal, Allstate raises three questions for our consideration:

(1) Whether the trial court abused its discretion or committed an error of law in finding that Ronald Miller had Madalyn Gower's implied permission to operate the covered automobile at the time of the accident?

(2) Whether the trial court abused its discretion or committed an error of law in entering the verdict against Allstate without prejudice as to the Adamskis' right to raise claims of bad faith against Allstate when the Adamskis were ordered to address the issue of bad faith ten days prior to trial?

(3) Whether the trial court abused its discretion or committed an error of law in considering a juvenile court transcript in evaluating the credibility of Allstate's witnesses?

On cross-appeal, the Adamskis contend that the trial court abused its discretion or committed an error of law in denying their motion for pre-judgment and post-judgment interest on the verdict.

Our standard of review of an order denying j.n.o.v. is whether there was sufficient competent evidence to sustain the verdict. *Wenrick v. Schloemann–Siemag Aktiengesellschaft, et al.,* 523 Pa. 1, 4, 564 A.2d 1244, 1246 (1989). The standard of review for an appellate court is the same as that for a trial court: j.n.o.v. will be entered only in a clear case where the facts are such that no two reasonable minds could fail to agree that the verdict was improper. *Pirozzi v. Penske Olds–Cadillac–GMC,* 413 Pa.Super. 308, 311, 605 A.2d 373, 375 (1992). An appellate court will reverse a trial court ruling only if it finds an abuse of discretion or an error of law that controlled the outcome of the case. *Timbrook v. Foremost Ins. Co.,* 324 Pa.Super. 384, 387, 471 A.2d 891, 892 (1984).

 Our standard of review of a trial court's grant or denial of a motion for a new trial is, generally, whether the trial court clearly and palpably abused its discretion or committed an error of law which controlled the outcome of the case. *Stevenson v. General Motors Corp.*, 513 Pa. 411, 521 A.2d 413 (1987). If support for the court's decision is found in the record, the order must be affirmed. A new trial will only be awarded where the verdict is so contrary to the evidence as to shock one's sense of justice. *Giovanetti v. Johns–Manville Corp.*, 372 Pa.Super. 431, 439, 539 A.2d 871, 875 (1988).

 First, Allstate contends that the trial court abused its discretion or committed an error of law in finding that Miller had Gower's implied permission to drive the Nova on the date in question. We agree.

Allstate issued the instant automobile insurance policy to Millard and Madalyn Gower on April 17, 1984. The policy covered three vehicles, including the Nova, and defined "persons insured" as follows:

(1) While using **your** insured auto

 (a) **You,**

 (b) Any **resident** relative, and

 (c) Any other person with **your** permission.

* * * * * *

**Definitions**

(5) "You" or "Your"—mean the policyholder named on the declarations page and that policyholder's **resident** spouse.

(hereinafter as "The Omnibus Clause"). The policyholders listed on the declaration page of the instant policy were Millard and Madalyn Gower. It is clear from the record that the Gowers' daughter, Patricia Dooley, had the Gowers' express permission to operate the Nova on the accident date. In addition, it is undisputed that Miller did not have the Gowers' express consent to drive the Nova. The question which remains, therefore, is whether Miller had the implied permission of the Gowers to drive the Nova at the time of the accident. *See Exner v. Safeco Ins. Co. of America,* 402 Pa.

473, 167 A.2d 703 (1961) (holding that for purposes of an omnibus clause in an automobile policy, permission given to a driver by the insured may be either express or implied).

"Implied permission may arise from the relationship of the parties or by virtue of a course of conduct in which the parties have mutually acquiesced." *Brower v. Employers' Liability Assurance Co., Ltd.,* 318 Pa. 440, 444, 177 A. 826, 828 (1935). *See State Farm Mut. Ins. Co. v. Judge,* 405 Pa.Super. 376, 592 A.2d 712 (1991); *Federal Kemper Ins. Co. v. Neary,* 366 Pa.Super. 135, 530 A.2d 929 (1987). In *Judge, supra,* this court summarized the law of this Commonwealth concerning implied permission in the context of automobile usage:

> [P]ermission requires something more than mere sufferance or tolerance without taking steps to prevent the use of the automobile, and permission cannot be implied from possession and use of the automobile without the knowledge of the named insured. The critical question will always be whether the named insured said or did something that warranted the belief that the ensuing use was with his consent. There must be a connection made with the named insured's own conduct; proof of acts, circumstances, and facts, such as the continued use of the car, will be insufficient unless they attach themselves in some way to the acts of the named insured.

*Judge,* 405 Pa.Super. at 379–81, 592 A.2d at 714–15 (quoting *Neary,* 366 Pa.Super. at 140, 530 A.2d at 931) (citations omitted)).

The appellate courts of this Commonwealth have reversed trial court findings of implied consent in the following cases: In *Volk v. Cacchione,* 395 Pa. 636, 150 A.2d 849 (1959), a father granted his son permission to use the family automobile. During or after a high school dance in Erie, Pennsylvania, the son loaned the automobile to a friend, who was later involved in an automobile accident in the State of New York. Prior to the accident, the son and his friend had both worked for the father as apprentice plasterers and frequently borrowed the father's automobile for social purposes. The Supreme Court of Pennsylvania found that this evidence was

insufficient to demonstrate that the father had given his son's friend implied permission to drive the automobile. *Id.* at 640, 150 A.2d at 852. Similarly, in *Insurance Co. of No. America v. State Farm Mut. Ins.*, 266 Pa.Super. 197, 403 A.2d 611 (1979), a father granted permission to his daughter to use the father's automobile to drive to and from college. The daughter, from time to time, loaned the automobile to her college roommate. On one such occasion, the roommate was involved in an accident while driving the automobile. The Insurance Company of North America (INA) denied coverage under the father's policy. This court affirmed summary judgment in INA's favor holding that the mere fact that the father knew that his daughter had a roommate and that he gave his daughter permission to use the automobile did not create a sufficient connection from which it could be implied that the father gave the roommate permission to drive the car. *Id.* at 198–200, 403 A.2d at 612–13.

Next, in *Judge, supra,* a case factually similar to this case, an insured left his automobile with a former girlfriend with instructions not to use the automobile during his absence. The automobile was insured by State Farm Mutual Insurance Company (State Farm). While the insured was away, however, the girlfriend gave her son permission to drive the automobile. Thereafter, the son was involved in a fatal automobile accident. This court reversed the trial court's finding that the son had implied permission to drive the insured's automobile even though the son had operated the automobile on *two prior occasions.* The son had first used the automobile in the presence of the insured in a parking lot and, on the second occasion, there was no evidence that the insured consented to its use or approved of it thereafter. *Id.* 405 Pa.Super. at 381, 592 A.2d at 715. This court found that the girlfriend's son's operation of the vehicle on these two prior occasions did not establish implied consent. *Id.*

After accepting the trial court's factual findings, we find that Miller did not have the Gowers' implied permission to drive the Nova at the time of the accident. The trial court

made the following factual findings with respect to the use of the Nova:

(1) When Dooley [daughter of insureds] and Miller were living together, Miller did not own a vehicle. With her mother's permission, Dooley had full-time, unrestricted use of the Nova.

(2) The Nova was kept at the apartment where Miller and Dooley resided.

(3) The Gowers were aware that Miller did not own a vehicle.

(4) Miller used the Nova to travel to and from work on several occasions, to and from the store, and to and from and various family members' households.

(5) Miller repaired, maintained, and purchased gasoline for the Nova.

(6) At no time prior to the accident did the Gowers tell Miller that he was not permitted to drive the Nova.

(7) On *one* occasion prior to the accident, Mrs. Gower observed Miller driving the Nova on the opposite side of the road. Miller and Gower pulled over to the side of the road and exited their vehicles to converse. At no time during their conversation did Mrs. Gower tell Miller that he was not permitted to drive the Nova.

The fact that Miller drove the Nova to and from work, the store, etc., and repaired and maintained the Nova is irrelevant to our determination unless the Gowers, as the insureds, had actual knowledge of such use. *Judge, supra; Neary, supra.* To the contrary, the record indicates that the Gowers knew of only one occasion on which Miller drove the insured vehicle. The Gowers' knowledge of one-time usage does not amount to "a course of conduct" so as to infer implied permission to drive the Nova. *Brower, supra.* The knowledge of this one occasion coupled with the fact that the Gowers knew that their daughter resided with Miller and that Miller did not possess his own vehicle is insufficient to establish the required connection between the named insured and the operator in order to

establish implied permission. *Brower, supra; Judge, supra; Neary, supra.*

■ In addition to finding that Miller had implied permission to drive the Nova, the trial court found that Miller drove the Nova on the date in question with the "reasonable belief" that he had the Gowers' permission to do so. In so holding, the trial court relied on this court's decision in *State Farm Mut. Auto. Ins. v. Moore,* 375 Pa.Super. 470, 544 A.2d 1017 (1989). This reliance is misplaced as the facts in *Moore* are clearly distinguishable from those in this case.

In *Moore,* an insured's daughter had the insured's permission to drive the covered automobile. After frequenting a few bars one evening, the daughter asked a friend (an unlicensed individual) to drive her parents' automobile to a designated location while she rode with friends in another vehicle. On the way to the destination, the unlicensed driver was involved in an accident. The Ohio Casualty Insurance Company (Ohio Casualty) denied coverage claiming, in part, that because the driver was not licensed to drive, he could not have had a "reasonable belief" that he was entitled to use the insured vehicle. *Id.* at 472, 544 A.2d at 1018. The Ohio Casualty policy provided that:

We do not provide Liability Coverage:

11. For any person using a vehicle without a **reasonable belief** that the person is **entitled** to do so.

*Id.* at 474, 544 A.2d at 1019 (emphasis added). Pursuant to this exclusion in the insurance policy, the trial court instructed the jury that they were to decide whether the driver had a "reasonable belief" that he was entitled to operate the vehicle. *Id.* at 474, 544 A.2d at 1019. The jury returned a verdict finding that the driver had a reasonable belief that he was entitled to drive the vehicle in question. *Id.* On appeal, this court upheld the jury's verdict. *Id.* at 478, 544 A.2d at 1021; *see also Belas v. Melanovich,* 247 Pa.Super. 313, 372 A.2d 478 (1977); *Carlsson v. Pennsylvania General Ins. Co.,* 214 Pa.Super. 479, 257 A.2d 861 (1969).

There is no such "reasonable belief" provision/exclusion in this case. Rather, the Omnibus Clause in the Allstate policy unambiguously provides that unless Miller had the express or implied consent of the Gowers, as the insureds, to drive the Nova at the time of the accident, Allstate's liability will not attach. Miller's "reasonable belief" at the time of the accident, therefore, is irrelevant. Consequently, the trial court's alternative finding that Miller reasonably believed that he had the permission of the Gowers to drive the Nova is not supported by the law or the facts of this case.

Because we find no express or implied permission in this case, we conclude that the trial court erred in entering a verdict in favor of the Adamskis and against Allstate in the amount of $50,000.00. *Pirozzi, supra.*[2]

Judgment reversed.

BECK, J., files a dissenting opinion.

BECK, Judge, dissenting:

I believe that the majority has misapplied the law to the facts as found by the trial court, and I therefore must dissent.

In this appeal from the trial court's denial of a motion for judgment notwithstanding the verdict (j.n.o.v.), we merely must decide whether there was sufficient competent evidence to sustain the verdict. *Wenrick v. Schloemann–Siemag Aktiengesellschaft,* 523 Pa. 1, 564 A.2d 1244 (1989). It was, after all, the trial judge who observed the demeanor and relative credibility of the witnesses. We also must examine the evidence in the light most favorable to the verdict winner below. *See Belas v. Melanovich,* 247 Pa.Super. 313, 372 A.2d 478 (1977). Under this limited scope of review, we may properly accept the trial court's finding of fact that:

> On one occasion prior to the accident, Gower [insured owner] observed Miller driving the vehicle on the opposite side of the road. Gower passed Miller, who was driving the

2. Because we reverse and enter judgment in favor of Allstate, we need not address Allstate's remaining contentions or the Adamskis' contention on cross-appeal.

vehicle, on the opposite side of the road. Gower changed the direction of her vehicle and drove up behind Miller, blinking her lights. Gower then pulled over, as did Miller. Gower exited her car, approached Miller, and they had a brief conversation. During that encounter, Gower did not tell Miller that he was not allowed to use her vehicle. Thereafter, Gower did not tell Miller that he was not permitted to use the vehicle.

Finding of Fact 18, Tr.Ct. Opinion at 4–5. Despite the apparent acceptance of this finding,[1] and the additional findings that Mrs. Gower knew that her daughter and Miller lived together, and that he did not have a car of his own (R. 87a, 89a), the majority here reverses the trial court's conclusion that Miller had implied permission to operate the insured vehicle. By granting j.n.o.v. in favor of Allstate on this issue, the majority has misconstrued the applicable case law.

The majority relies upon *Volk v. Cacchione*, 395 Pa. 636, 150 A.2d 849 (1959), *Insurance Co. of N. America v. State Farm Mut. Ins. Co.*, 266 Pa.Super. 197, 403 A.2d 611 (1979), and *State Farm Mut. Ins. Co. v. Judge*, 405 Pa.Super. 376, 592 A.2d 712 (1991) to support the conclusion that there was no implied permission in this case. I would agree that the facts in each of these cases indicate that the insured owner did not give implied permission to use the vehicle to the ultimate driver.

In *Volk*, for example, the insured owner ("father") permitted his son to drive the insured vehicle on prom night. The son then allowed his friend to borrow the car, during which time it was involved in an accident. The supreme court held that the friend did not have implied permission to use the vehicle, even though the friend, who also worked for the father, occasionally

---

1. Actually, the majority has summarized this finding as follows:

 On one occasion prior to the accident, Mrs. Gower observed Miller driving the Nova on the opposite side of the road. Miller and Gower pulled over to the side of the road and exited their vehicles to converse. At no time during their conversation did Mrs. Gower tell Miller that he was not permitted to drive the Nova.

 Majority Opinion at 363.

was permitted to use a business vehicle for specific errands as instructed by the father. Aside from these limited instances when the father knew about and approved of the friend's use of one of father's automobiles, the friend previously drove the car involved in the accident only on occasions when son also was a passenger. Son was not in the car at the time of the accident. Although the majority states that the son and his friend "frequently borrowed the father's automobile for social purposes," it is not clear from the *Volk* opinion what were the circumstances of such "borrowing," or even whether the father knew that the friend borrowed the car at these times.

In addition, in *Insurance Co. v. State Farm, supra,* this court held that the father-owner had not given implied permission to his daughter's roommate to use his automobile. The father had no knowledge of the roommate's use, and there was no "connection made with the named insured's [father's] own conduct." *Id.* at 198, 403 A.2d at 612. In this case, there certainly was a "connection" between Miller's use of Gower's automobile, Gower's own conduct after discovering the use, and her subsequent silence.

Nor is *Judge, supra,* factually similar to this case. In *Judge,* this court properly found that there was no implied permission where the insured owner temporarily left his vehicle in the custody of his former girlfriend, *with express instructions that she not use it.* The fact that the girlfriend's son previously had driven the car *in a parking lot,* while the owner was in the car with him, did not give rise to an inference of implied permission. Finally, the fact that the son had driven the vehicle on other occasions without the owner's consent or approval did not change matters. There was no indication that the owner even knew about these additional driving incidents. Obviously, no implied permission could be inferred from such facts. *See also Laroche v. Farm Bur. Mut. Auto. Ins. Co.,* 335 Pa. 478, 7 A.2d 361 (1939) (driver had owner's express permission to drive vehicle to Washington, but there was no implied permission for driver's use of vehicle on another trip); *Belas v. Melanovich, supra* (where owner

allowed her nephew to drive vehicle, and nephew let his friend drive, friend did not have owner's implied permission to drive).

In none of the cases cited by the majority was there actual knowledge of the use of the automobile coupled with a failure to object by the insured owner. In this case, Mrs. Gower witnessed Miller driving her car, the two immediately pulled over to the side of the road and *actually had a conversation,* but Mrs. Gower never said anything about Miller's use of her car. Her failure to object to Miller's using the car, once she knew that he did so, operates as implied permission.

I would affirm the trial court's order denying the motion for judgment n.o.v.