## Santana v. Wentzien

*Jeffrey L. Rudnick,* for plaintiff.
*Joseph G. McHale,* for defendant.

RUFE, J., *J.,* June 19, 1995—This opinion is written pursuant to an appeal by defendant, Jennifer Wentzien, from our order of March 8, 1995, denying defendant's motion for judgment n.o.v. and/or a new trial.

On April 11, 1991, plaintiff Sue Ann Santana filed a complaint in trespass seeking to recover damages for injuries sustained as a result of an automobile accident which occurred on October 29, 1989. The parties were traveling on the Pennsylvania Turnpike in Bucks County, when plaintiff's automobile was struck in the rear by a vehicle operated by defendant. At the time

of the accident, plaintiff was driving a vehicle insured in the State of New Jersey and defendant's automobile was insured in the State of Missouri.

A jury trial was held before this court on October 13 and October 14, 1994. The jury returned a verdict in favor of plaintiff and awarded damages in the amount of $50,000. Defendant timely filed a motion for post-trial relief claiming, inter alia, that this court committed error by not applying the New Jersey Automobile Reparation Reform Act, N.J.S.A. 39:6A-1 et seq.; by failing to grant defendant's request for a mistrial when a juror had to be excused from the panel after becoming ill during the testimony of defendant's expert; and by making prejudicial comments concerning defendant's case during the charge to the jury. Defendant's request for post-trial relief was subsequently denied and the instant appeal followed.

Initially, we note that the decision to grant or deny a request for a new trial rests in the sound discretion of the trial court. Absent an abuse of that discretion or an error of law which affects the outcome of the case, the court's decision should not be disturbed. *Adamski v. Miller,* 434 Pa. Super. 355, 643 A.2d 680 (1994). The trial court may grant a new trial where, in the interest of justice, re-litigation is required to arrive at a just verdict. *Hayes v. Stephenson,* 192 Pa. Super. 392, 161 A.2d 900 (1960). A new trial cannot be based on an error of law alone. The trial error must have influenced the verdict and led to an incorrect result. *Naccarati v. Garrett,* 351 Pa. Super. 437, 506 A.2d 428 (1986). Similarly, a trial court should only enter judgment n.o.v. "where the facts are such that no two reasonable minds could fail to agree that the verdict

was improper." *Adamski, supra* at 359, 643 A.2d at 682; *Pirozzi v. Penske Olds-Cadillac-GMC Inc.,* 413 Pa. Super. 308, 312, 605 A.2d 373, 375 (1992).

Defendant's first contention on appeal is that this court committed an error of law by failing to apply the New Jersey Automobile Reparation Reform Act, N.J.S.A. 39:6A-1 et seq., as requested in her motion in limine of October 12, 1994. Specifically, defendant maintains that because plaintiff, a New Jersey resident at the time of the accident, selected the verbal tort threshold when she purchased automobile insurance, this court should have applied New Jersey law during the trial, thereby limiting plaintiff's recovery.

On October 13, 1994, just prior to commencing the trial in this matter, we entertained oral argument on the particular issue of whether Pennsylvania or New Jersey law was to be applied during the trial. Both parties also provided the court with memoranda of law in support of their respective positions.

Plaintiff's posture was that her case would be severely prejudiced by the application of New Jersey law, as she was unaware that defendant was going to assert the verbal threshold limitation until a week before trial. Plaintiff stated that the information had been supplied to defendant as early as July 15, 1991. Plaintiff maintained that since defendant never raised the limitations of the New Jersey policy as an affirmative defense nor sought to amend its new matter, the issue was waived.

Pennsylvania Rule of Civil Procedure 1030 requires that all affirmative defenses be pleaded under the heading new matter. Pa.R.C.P. 1030. The language of the

26

rule is clear and cannot be ignored. *Evans v. D'Iorio,* 360 Pa. Super. 45, 519 A.2d 983 (1987). Essentially, new matter is anything other than a setoff, a denial or a counterclaim. *Iorfida v. Mary Robert Realty Company Inc.,* 372 Pa. Super. 170, 539 A.2d 383 (1988). A claim that a plaintiff's recovery is barred or abolished by a statute is an affirmative defense which falls under the purview of the catchall provision of Rule 1030. *Roberts v. Philadelphia,* 3 D.&C.3d 763, 765 (1978). "Unlike counterclaims, affirmative defenses are *compulsory* and therefore must be timely pleaded or they are forever lost." *Bender's Floor Covering Co. v. Gardner,* 387 Pa. Super. 531, 536, 564 A.2d 518, 521 (1989). (emphasis in original) "The failure to raise an 'affirmative defense' . . . will result in a waiver of the defense." *Nassar v. Empire Sanitary Landfill Inc.,* 433 Pa. Super. 391, 396, 640 A.2d 1315, 1317 (1994).

In the instant action, defendant filed an answer with new matter on or about June 24, 1991. Contained in the new matter was the following defense:

"(14) Plaintiff's claims against the defendants are barred or limited by the provisions of the Pennsylvania Motor Vehicle Financial Responsibility Act, 75 Pa.C.S. §1701." (Defendant's answer with new matter, paragraph 14.)

Also, paragraph 16 under new matter referred to the affirmative defense of contributory negligence pursuant to Pennsylvania Contributory Negligence Act, 42 Pa.C.S. §1702. There was no mention in the new matter of any defenses pursuant to the New Jersey Automobile Reparation Reform Act. The law is clear; absent such pleading the defense is waived.

Furthermore, an underlying purpose to requiring a defendant to plead affirmative defenses in new matter is to place the plaintiff on notice as to the defenses which will be asserted at trial. Goodrich-Amram 2d, §1030:1, pp. 83-84. Herein, defendant placed plaintiff on specific notice that she would be invoking the defenses available under Pennsylvania law. It was not until a week before trial that defendant informed plaintiff that she would be asserting the verbal threshold limitation under New Jersey law. (N.T. 10-13-94, pp. 3-4.) We concluded that allowing that defense to be raised by defendant at trial would have extremely prejudiced plaintiff's case and would have undermined the objectives of Rule 1030.

Defense counsel maintained in oral argument before this court that defendant was unaware that plaintiff was a New Jersey limited tort holder until May of 1993, when the Honorable Isaac S. Garb entered an order compelling plaintiff to provide more specific answers to supplemental interrogatories. (N.T. 10-13-94, pp. 16-18.) Defense counsel then made the following motion:

"I will state to further protect it the rules in regards to pleadings are very liberal and that I will make an oral motion before the court now to state I move to include an affirmative defense that the New Jersey motor vehicle law applies in regard to the basic tort and threshold options and the other protections that law provides." (N.T. 10-13-94, pp. 18-19.)

In light of the evidence presented by plaintiff, and in accordance with the Rules of Civil Procedure governing amendment of pleadings, defendant's motion was properly denied.

Rule 1033 of the Pennsylvania Rules of Civil Procedure provides that a party may amend his or her pleading at any time by leave of court. Pa.R.C.P. 1033. While it is true that leave to amend should be liberally granted, amendments will not be permitted where the moving party had prior knowledge of the defense; where there is no reasonable excuse for the delay in seeking to amend and where prejudice to the rights of the opposing party will result. *Frey v. Pennsylvania Electric Company,* 414 Pa. Super. 535, 607 A.2d 796 (1992). Leave to amend an answer to assert a defense of which the defendant had prior knowledge will generally be denied, especially where the request to amend comes on the eve of trial. *Pugh v. Bankers Mutual Insurance Co. of Adams County,* 206 Pa. Super. 136, 211 A.2d 135 (1965).

In the present case, we determined that plaintiff's case would have been significantly prejudiced had defendant been permitted to amend her answer. The answer with new matter was filed in this case on or about June 24, 1991. The first time defendant sought to amend her answer was October 13, 1994, nearly three and one-half years after the filing of the answer and only minutes before the commencement of the jury trial. Defendant admitted that it was known from the outset of the case that plaintiff was a New Jersey resident. (N.T. 10-13-94, p. 18.) However, it was repeatedly argued that defendant did not know that plaintiff was a New Jersey limited tort holder until May of 1993. A review of the discovery in this case showed that defendant's statements in that regard were not accurate.

First, on July 15, 1991, in response to defendant's interrogatories, plaintiff provided a copy of the dec-

laration page of the New Jersey insurance policy. (N.T. 10-13-94, pp. 20-24, see also, exhibit "B" attached to plaintiff's post-trial brief contra defendant's motion for new trial or judgment n.o.v.) On the bottom left hand corner of the declaration page is printed the phrase "lawsuit threshold" and the name of the insurance company and plaintiff's New Jersey address are clearly printed at the top of the page. Second, plaintiff's counsel sent a letter to defense counsel on June 28, 1993 advising that plaintiff had elected the lawsuit threshold. (N.T. 10-13-94, p. 21.) These documents indicated that the information concerning plaintiff's limited tort holder status was known to defendant significantly prior to the eve of the trial, yet defendant never attempted to amend the answer before October 13, 1994.

Defendant offered no reasonable response to the facts presented by plaintiff concerning her prior knowledge of plaintiff's limited tort status. We found no merit in defense counsel's statement that he was unaware that the declaration page had been supplied in response to interrogatories because a different law firm was representing defendant at that time:

"THE COURT: . . . Would you address for me Mr. McHale, Mr. Rudnick's allegation that the declaration was provided to your former counsel for the defendant, LaBrum & Doak, as early as I think May of 1991?

"MR. McHALE: I am not aware of that, Your Honor. That was before I was even involved in it, long before our firm was involved and that was— . . . .

"THE COURT: Do you have the file from, your predecessor's file provided to your office?

"MR. McHALE: Some of that information was, Your Honor, but I don't believe—remember, we have had discovery, the only discovery sections I have are those that were generated from our office." (N.T. 10-13-94, pp. 22-23.)

In response to plaintiff's allegation concerning the information provided in the letter of June 28, 1993, defense counsel maintained that he was unfamiliar with the term "lawsuit threshold" and that it took him quite some time to find out that it was a term equivalent to the phrase "verbal threshold." (N.T. 10-13-94, p. 25.) We found that argument to be unpersuasive as well. At some point during the year and four months which followed the receipt of the letter, defense counsel could have determined the meaning of that phrase. Plaintiff's counsel was not required to provide definitions of the terms used by the insurance company. Thus, we were persuaded by plaintiff's arguments and, based upon the evidence in support thereof, concluded that defendant had prior knowledge of the defenses available to her under New Jersey law and that defendant had no reasonable excuse for the delay in seeking to amend the answer to include those defenses.

Additionally, we found that allowing the amendment would have been prejudicial to plaintiff. In discussing the concept of prejudice resulting from amendment of pleadings, the courts of the Commonwealth have adopted the following view:

"All amendments have this in common: they are offered *later in time* than the pleading which they seek to amend. If the amendment contains allegations which would have been allowed inclusion in the original plead-

ing (the usual case), then the question of prejudice is presented by the *time* at which it is offered rather than by the substance of what is offered. The possible prejudice, in other words, must stem from the fact that the new allegations are offered *late* rather than in the original pleading, and not from the fact that the opponent may lose his case on the merits if the pleading is allowed . . . ." *Bata v. Central-Penn National Bank of Philadelphia,* 448 Pa. 355, 380, 293 A.2d 343, 357 (1972), *cert. denied,* 409 U.S. 1108 (1973). (emphasis in original)

The later in a case the petition to amend is made, the more prejudice can be assumed if the amendment were to be granted. *Newcomer v. Civil Service Commission of Fairchance Borough,* 100 Pa. Commw. 559, 565, 515 A.2d 108, 111 (1986).

In the case at hand, the prejudicial consequences which would have resulted from allowing the amendment of defendant's answer only minutes before the onset of a jury trial were sufficient for us to deny defendant's request to amend. Had defendant informed plaintiff of her intent to invoke the provisions of the limited tort option earlier in the case, plaintiff's case preparation would have been significantly different. Under the tort exemption section of the New Jersey Automobile Reform Act, plaintiff would have had to prove that her injuries fell within one of the nine categories specified in the statute sufficient to pierce the threshold. N.J.S.A. 39:6A-8. Plaintiff convincingly argued that as part of taking the deposition of plaintiff's treating physician, Dr. Philip Spinuzza, the doctor would have had to evaluate and address the specific degree to which the injuries, sustained by plaintiff in the accident, had

impacted her life. (N.T. 10-13-94, p. 5.) Plaintiff's functional limitations were not addressed by the examining doctors because plaintiff did not believe it was an issue in the case.[1] Plaintiff never underwent a functional capacity evaluation which would have determined and calculated plaintiff's ability to perform normal bodily movements. (N.T. 10-13-94, p. 5.) Plaintiff maintained that had defendant placed her on notice that they were invoking the affirmative defense under the New Jersey statute, she would have been able to fully address the relevant issues necessary to appropriately present her case and overcome the threshold. Consequently, the prejudice which plaintiff would have suffered as a result of the amendment satisfied the test expounded by the court in *Bata,* since it stems from that fact that the affirmative defense was pleaded by defendant so late in the proceedings.

We find the instant case to be analogous to the case of *Kenney v. SEPTA,* 122 Pa. Commw. 1, 551 A.2d 614 (1988). In *Kenney,* the court affirmed the trial court's decision to deny the petition to amend where the facts involved a delay of more than three years, during which time the case was being prepared for trial. We believed plaintiff adequately evidenced that she would have suffered prejudice. We defer to the court in *Pugh, supra,* which stated, "Liberality in the amendment of pleadings is encouraged to insure justice for all parties. However, appellant may not take advantage of this liberality by inserting defenses of which it has prior knowledge,

---

1. On the date of the accident, October 29, 1989, the Pennsylvania Motor Vehicle Financial Responsibility Law (75 Pa.C.S. §1701 et seq.) did not contain a full tort versus limited tort option.

at its own pleasure, without explanation." *Id.* at 144, 211 A.2d at 139.

Defendant's second argument on appeal concerns our decision to deny defendant's request for a mistrial after one of the jurors became ill during the course of the trial. Upon review of the circumstances surrounding the juror's dismissal from the jury, we found no basis to grant a new trial.

On the second day of the trial, October 14, 1994, defendant presented the videotaped testimony of Dr. John T. Williams, an orthopedic specialist. In the course of viewing the tape, one of the members of the eight person jury became ill and fainted. Once the juror regained consciousness, the court and counsel met with him in camera. The juror did not feel he was capable of continued service and he was dismissed from jury duty without objection from either counsel. Before returning to open court, counsel agreed to proceed with a jury of seven and further agreed that a verdict of six out of the seven jurors would constitute the verdict of the jury. (N.T. 10-14-94, pp. 10-11.) Upon return to the courtroom, the jury was informed that the ill juror had been sent home with a clean bill of health. Counsel was again asked if they wished to proceed with the remaining number of jurors and both parties agreed. (N.T. 10-14-94, pp. 12-13.) The remainder of the videotape was then shown to the jury. Before breaking for lunch the defendant offered some exhibits and rested her case.

After lunch recess, defendant requested this court to declare a mistrial. The request was based upon a concern that the remaining members of the jury may

34

have been prejudiced by the juror's negative reaction to the testimony of the defense medical expert. The request for a mistrial was denied and refused. (N.T. 10-14-94, pp. 19-20.)

The grant of a mistrial is within the sound discretion of the trial court. *Commonwealth v. Gardner,* 490 Pa. 421, 416 A.2d 1007 (1980). A mistrial should only be granted in cases where a bias has been so fixed in the minds of the jury so as to preclude a fair and objective verdict. *Commonwealth v. Williamson,* 243 Pa. Super. 139, 364 A.2d 488 (1976). Herein, defendant maintained that the juror's illness was so severe that it disrupted the defendant's case and caused such a distraction that it rendered the testimony of defendant's expert meaningless.

In denying defendant's request for a mistrial we specifically noted that both counsel were afforded an opportunity to oppose a continuation of the case, but no objections were made. Both parties expressed a willingness to proceed with the trial and such willingness was established on the record. (N.T. 10-14-94, pp. 19-20.) Defendant's present argument to the contrary is precluded by her silence at the critical time. The court in *Morrissey v. Commonwealth, Department of Highways,* 440 Pa. 71, 269 A.2d 866 (1970), first noting that after learning of possible juror misconduct counsel specifically agreed to proceed with the trial, stated, "Having known of the possible disqualification of a juror and gambled on the verdict or any result which might follow, appellant cannot now complain: (citation omitted)." *Id.* at 79, 269 A.2d at 870; *Cohen v. Lancaster Redevelopment Authority,* 425 Pa. 441, 443, 229 A.2d 744, 745 (1967). The same concept can be applied

to this matter. Defendant had every opportunity to raise objections or request a mistrial, but instead she moved forward without hesitation and finished presenting her case.

Moreover, defendant presented no evidence which indicated that the jury had been prejudiced by the juror's illness. In *Commonwealth v. Harris,* 104 Pa. Commw. 580, 522 A.2d 184 (1987), no abuse of discretion was found where the trial court denied a motion for mistrial after the defendant suffered a seizure during the plaintiff's closing argument in a personal injury action. In *Harris,* the request for a mistrial was timely made and the "trial judge polled the jury, and determined that each juror could still render a fair and impartial verdict." *Id.* at 582, 522 A.2d at 185. In the instant action, the jury was clearly able to concentrate on the remainder of the expert's testimony. In fact, the tape was rewound slightly to make sure that the jury did not miss any testimony. In light of counsel's own decision to go forward with the trial and based upon our observations of the jury throughout the remainder of the testimony, there was no basis for concluding that the jury was unable to render a fair and impartial verdict.

Defendant's third appeal issue pertains to comments made by this court during the charge to the jury. Specifically, defendant objected to the following statements:

"Question number two, was the negligence of Jennifer Wentzien a substantial factor in bringing about the plaintiff's harm?

"Members of the jury, I will suggest to you that you may not have a lot of difficulty with that question as well. It is acknowledged as I understand the testimony

of the defendant's expert witnesses that the plaintiff suffered a cervical sprain and strain which will resolve within a reasonable period of time so that the history taken by the defendant's witnesses it must be acknowledged that the negligence of the defendant was a substantial factor.

"Where this matter becomes an issue of serious controversy, however, is the scope and extent and the amount of harm sustained by the plaintiff and that will be the issue that will be central to you, whether this was a minor injury that should have been resolved." (N.T. 10-14-94, pp. 92-93.)

Defendant contended that the above statements prejudiced the jury's deliberations, essentially taking from the jury the "substantial factor" issue.

"The primary purpose of a court's charge to the jury is to apprise the members of the jury, in an understandable manner, of the legal principles by which they must decide the case." *Hawthorne v. Dravo Corporation, Keystone Division,* 352 Pa. Super. 359, 368, 508 A.2d 298, 303 (1986), *appeal denied,* 514 Pa. 617, 521 A.2d 932 (1987). "Erroneous jury instructions may be the basis for a new trial if it is shown that the instructions were fundamentally in error and might have been responsible for the verdict." *Sedlitsky v. Pareso,* 425 Pa. Super. 327, 332, 625 A.2d 71, 74 (1993); *Ott v. Buehler Lumber Company,* 373 Pa. Super. 515, 520, 541 A.2d 1143, 1146 (1988).

Read in its entirety, we found no error in our instruction to the jury. Prior to reviewing the actual questions on the verdict slip with the jury, the court gave a detailed explanation of the meaning of the second question. Specifically, the court said:

"However when you get the verdict slip, question number two will relate to whether the negligence of the defendant was a substantial factor in bringing about the plaintiff's harm. Because I say to you, members of the jury, that in order for the plaintiff, Sue Santana, to recover in this case the defendant's negligence or reckless conduct must have been a substantial factor in bringing about the plaintiff's injuries." (N.T. 10-14-94, p. 87.)

This explanation was followed by a definition of legal cause. Thus, the jury was given a clear and understandable definition of the legal principles necessary to decide the case, as well as an understanding of the method for answering the verdict slip.

Additionally, the statements challenged by defendant as prejudicial were consistent with the evidence presented in the trial. In the course of instructing a jury, a trial judge is given considerable discretion to summarize the evidence established at trial. *Noecker v. Johns-Manville Corporation,* 355 Pa. Super. 463, 472, 513 A.2d 1014, 1019 (1986). So long as the court leaves the jury free to make its ultimate determination, it is the right, and in many cases, the duty of the court to express its opinion on the weight and effect of the evidence. *Keating v. Belcher,* 384 Pa. 129, 133, 119 A.2d 535, 538(1956). In the comments challenged by defendant, it is clearly stated that the review of testimony was only the court's understanding of the evidence adduced at trial. At all times, the jury was told that the ultimate determination of the case was their responsibility. Throughout the instructions the court repeatedly reminded the jury that their recollection of the testimony and evidence was controlling. (N.T. 10-14-94, pp. 73,

38

76-77, 84, 94.) The statements did not place any undue weight upon the court's recollection of the testimony.

Additionally, and perhaps most importantly, the court specifically addressed defendant's objection before sending the jury to deliberate. So as to avoid any possibility of prejudice in the deliberations the court stated:

"Now, members of the jury, I will say one further thing. It is obvious that Mr. McHale does not agree with my representation to you that you should have no difficulty in resolving question number two. Therefore I say to you that it is important for you to make that decision, make an independent verdict as to question number two as to whether the negligence of Jennifer Wentzien was a substantial factor in bringing about the plaintiff's harm. And in doing so you may take into consideration whether you believe the plaintiff suffered any harm whatsoever as a result of this accident." (N.T. 10-14-94, pp. 97-98.)

This was the last statement heard by the jury before they retired to deliberate and as such, it left the jury with a clear indication that it was their recollection of the evidence, and not the court's, which governed. If any prejudice could be inferred from the court's prior comments, it was rendered harmless by the final instruction to the jury. Therefore, we concluded that there was no fundamental error in the charge to the jury which would have justified a new trial.

We have addressed, herein, the three appeal issues which were of greatest concern to defendant. Upon review of the eleven remaining matters complained of on appeal, we do not find any basis to support a new trial or to justify a judgment n.o.v.

For all the foregoing reasons, defendant's motions for post-trial relief were denied and refused.