681 A.2d 171

**David ADAMSKI and Kathy Adamski, Appellants,**

**v.**

**Ronald C. MILLER, Allstate Insurance Company, Garnishee, Appellees.**

Supreme Court of Pennsylvania.

Argued Jan. 23, 1996.

Decided Aug. 21, 1996.

objections that are not presented in preliminary objections or the answer).

Marvin O. Schwartz, Palmerton, for Adamski.

Kent H. Herman, Allentown, for Allstate Insurance Company.

Ronald C. Miller, Pro Se.

Before NIX, C.J., and FLAHERTY, ZAPPALA, CAPPY, CASTILLE, NIGRO and NEWMAN, JJ.

## *OPINION*

CASTILLE, Justice.

This case involves an insurance coverage dispute over whether there was sufficient evidence at trial to establish that a third-party had the permission of the policyholder to use the insured automobile, thereby making the insurer liable for damages resulting from the third-party's use of the policyholder's car. For the reasons set forth below, we reverse the Superior Court, which held that the evidence was not sufficient to render the insurance company liable.

The underlying history giving rise to this matter is that Ronald Miller, while driving a car owned by his girlfriend's mother, hit and injured appellant David Adamski, who was riding nearby on a motorcycle. Following a bench trial in the Northampton County Court of Common Pleas, the jury awarded $305,000.00 in damages to appellants Adamski and his wife.[1] Because the car Miller used was insured by Allstate Insurance Company, appellants then filed an action to garnish the policy limits under the mother's automobile insurance policy claiming that Allstate, as the insurer of the mother's car, was liable under the insurance policy for partial payment of the damages Miller caused.[2] Allstate denied coverage arguing that it was not liable for any damages because it was only liable under the policy for damages if the driver had permission from the insured to drive the insured's car, and Miller did not have the mother's permission to drive her car.[3]

---

1. The jury awarded $265,000.00 to Mr. Adamski for his injuries and damages and $40,000.00 to his wife for loss of consortium.

2. The policy limit was $50,000.00 per person, with a $100,000.00 limit each occurrence.

3. The policy at issue provided, in pertinent part, that:
   **Persons Insured**

Following a bench trial, the trial court found that Miller had the mother's implied consent to use the vehicle and entered a verdict in favor of appellants and against Allstate in the amount of $50,000.00. Allstate filed post-trial motions requesting, *inter alia*, that the trial court enter a judgment notwithstanding the verdict because it believed appellants failed to establish that Miller had the mother's consent to drive her automobile. The trial court denied appellee's post-trial motions. On appeal, the Superior Court found that the trial court had abused its discretion in finding that implied consent existed and reversed the trial court's ruling in favor of appellants. *Adamski v. Miller*, 434 Pa.Super. 355, 643 A.2d 680 (1994). Appellants appeal to this Court arguing that the Superior Court failed to review the evidence under the correct standard and that, had it done so, the evidence warranted an affirmance of the trial court's ruling. We agree.

The proper standard of review for an appellate court when examining the lower court's refusal to grant a judgment n.o.v. is whether, when reading the record in the light most favorable to the verdict winner and granting that party every favorable inference therefrom, there was sufficient competent evidence to sustain the verdict. *Wenrick v. Schloemann–Siemag Aktiengesellschaft*, 523 Pa. 1, 4, 564 A.2d 1244, 1246 (1989). Questions of credibility and conflicts in the evidence are for the trial court to resolve and the reviewing court should not reweigh the evidence. *Commonwealth, Dep't of Transp., Bureau of Traffic Safety v. Korchak*, 506 Pa. 52, 57, 483 A.2d 1360, 1362 (1984). Absent an abuse of discretion, the trial court's determination will not be disturbed.

(1) While using your insured auto
   (a) **You**
   (b) Any **resident** relative, and
   (c) *Any other person using it with **your** permission.*
Reproduced Record at 211 (italics added). "You" or "Your" is defined under the policy as: "the policyholder named on the declarations page and that policyholder's **resident** spouse." R.R. at 215. Miller testified that the policyholder's spouse never saw him drive the car or gave him permission to do so; thus, it is clear that permission could not have been obtained from the "resident spouse."

■ Viewing the evidence in its proper light, with all reasonable inferences therefrom, the record reveals the following: Miller testified that he began dating the insured's daughter in 1992. Sometime in 1994, the insured arranged for appellee and her daughter to live together at an apartment complex after the daughter became pregnant.[4] Shortly thereafter, on July 19, 1994, while appellee drove the daughter from her brother's house back to their apartment due to her feeling ill, he collided with appellant Adamski's motorcycle.

At all times pertinent, the daughter had possession of the mother's car (which was kept at the apartment complex where the daughter and Miller resided) and control of the keys. At no time did Miller have a vehicle of his own, a situation of which the mother was aware. The daughter permitted Miller to use the car to travel to and from his work, to go the store, visit his family and for other occasions. Miller further testified that he was the person that handled the maintenance of the car and that he did so at his own expense. When asked whether the mother was aware that he drove the car, he testified that on at least one instance before the collision, when driving home from work during the afternoon, she actually saw him driving the car and talked to him after he stopped the car to talk to her. He further testified that at no time did the mother tell him that he should not or could not drive her car.

The mother testified that she had repeatedly told her daughter that only she, her husband and her daughter could drive the car, and that the day before the collision she had expressly told her daughter that she was the only person allowed to drive the car to her brother's the following day. The mother further testified that she was unaware that Miller was going to the brother's house the next day, that she never told Miller he could not drive her car, that she knew Miller and her daughter were living together, that she knew Miller did not own a car, that Miller had never asked for permission to drive her car, that she was the person that maintained the car, that she had never seen Miller drive her car and that after the accident she took the car away from her daughter

4. Miller was seventeen years old at the time of the collision at issue.

since her daughter had violated her rules by allowing Miller to drive the car.

The daughter testified via deposition [5] that on the day of the accident, Miller had been drinking at her brother's house, that around 3:30 p.m. she decided it was time for them to leave so that they could get home before dark, that she told Miller he could not drive the car since he had been drinking and because her mother did not allow him to drive the car but that he took the keys from her and drove her home over her objections. She further testified that she did not keep the car, that her mother only let her use the car on occasion, that she never willingly let anyone use the car other than herself although Miller had taken the car without her express permission on at least two occasions before the accident, that as a result of Miller threatening her she had lied in a prior statement that she was not feeling well on the 19th and that she allowed Miller to drive the car, that Miller never maintained her mother's car, that her aunt had seen someone driving the car other than herself and informed her mother, that upon learning that someone else had driven the car, her mother repeated to her that she was not to let others drive her car, and that her mother did not like Miller. The daughter further testified that after the accident Miller broke up with her to go back to a former girlfriend.

Notwithstanding these conflicting accounts, the trial court found Miller's testimony to be more credible and found that the evidence demonstrated that he had the mother's implied consent to use the covered automobile. Given this evidence, we must now determine whether the trial court properly found that Miller had the mother's implied consent to use her car thereby making Allstate liable for a portion of the damages.

■ In speaking to the issue of whether a third-party's actions are covered under another's insurance policy, this Court has stated:

5. The trial court determined the daughter to be unavailable since she lived in Massachusetts and was beyond the subpoena power of the court; hence, her deposition taken in this case was admitted as evidence.

the operator must be shown to have obtained possession of the car lawfully and with permission, express or implied, of the named [insured]; if there is a complete lack of permission to use the car for any purpose, the operator is clearly not within the coverage of the policy.

*Brower v. Employers' Liability Assurance Co.*, 318 Pa. 440, 444, 177 A. 826, 828 (1935). The necessary permission required to trigger coverage for the third party's actions may "result by implication from the relationship of the parties or a course of conduct in which the parties have mutually acquiesced." *Id. Accord Beatty v. Hoff*, 382 Pa. 173, 177, 114 A.2d 173, 174 (1955). Moreover, where express permission has not been given, this Court has stated that implied consent can be established where it is shown that the insured of the car saw the third-party driving his or her car and did not object to such use. *Id.* at 179–80, 114 A.2d at 175–76 (no implied consent absent any evidence that father had knowledge that his son was using the father's car).

We find the evidence found by the trial court to be credible and amply supported the trial court's verdict and that, accordingly, the trial court did not abuse its discretion in denying Allstate's motion for a judgment n.o.v.[6] *Id.*

**6.** The cases cited by appellants and the Superior Court in support of the argument that implied permission did not arise in this matter are not compelling in that none of these cases involved circumstances where the insured had actual knowledge of the so-called prohibited use and failed to voice an objection to it, as was the case in the instant matter. *See, e.g., Volk v. Cacchione*, 395 Pa. 636, 641–42, 150 A.2d 849, 852 (1959) (no implied permission where owner's son lent car to friend who had been permitted to use it in the past only in the presence of the friend or to run specific errands for owner); *State Farm Mutual Ins. Co. v. Judge*, 405 Pa.Super. 376, 381, 592 A.2d 712, 715 (1991) (no implied permission where owner had allowed driver to drive car on one prior occasion in a parking lot in driver's presence); *Federal Kemper Ins. Co. v. Neary*, 366 Pa.Super. 135, 142, 530 A.2d 929, 932 (1987) (no express permission where owner had expressly forbidden son to allow unlicensed person to drive car and son allowed unlicensed friend to drive); *Ins. Co. of North America v. State Farm Mutual Ins. Co.*, 266 Pa.Super. 197, 200, 403 A.2d 611, 612–13 (1979) (no express permission where daughter borrowed car for express purpose of moving belongings and daughter's roommate borrowed car for other purposes).

Accordingly, the Superior Court's order reversing the trial court's ruling is, itself, reversed.

NIX, Former C.J., did not participate in the decision of this case.